CITY COMMISSION OF THE CITY OF SPRINGFIELD,
APPELLANT AND APPELLEE, *v.*
BETHEL TOWNSHIP OF CLARK COUNTY, OHIO ET AL.,
APPELLEES AND APPELLANTS.

[Cite as Springfield v. Bethel Township (1982),
69 Ohio St. 2d 500.]

(Nos. 81-881 and 81-884—Decided March 3, 1982.)

Mr. *James F. Peifer,* director of law, and Mr. *David R. Collins,* for city of Springfield.

Mr. *James A. Berry,* prosecuting attorney, and Mr. *David E. Smith,* for Bethel Township, Moorefield Township and Clark County.

*Per Curiam.*

### I.

In case No. 81-881, Springfield sets forth six propositions of law for our consideration. Each questions a separate calculation of the BTA and, except as otherwise noted, each will be discussed separately herein.

### A.

In reviewing Springfield's estimated total expenditures for 1976, the BTA noted that the sum of $540,448 was included in Springfield's 1976 budget as a "Contingencies" account. The BTA held that this account was an "account for non-existent needs" and eliminated the same from Springfield's 1976 disbursements. The BTA then treated this account as part of the unencumbered balance of Springfield's general fund as of December 31, 1976. The effect of this action was to reduce Springfield's "relative need" for 1977 by the sum of $540,448.[3]

Springfield contends that the decision of the BTA is unreasonable because there is neither evidence nor reasoning to support its decision. In *Cleveland* v. *Budget Comm.* (1976), 47 Ohio St. 2d 27, 31, we held that "allocation [of the local government fund] must be based upon some ascertainable and reasonable standard and upon the evidence presented." Appellees do not argue that there was, in fact, evidence presented upon which

---

[3] In reaching its decision, the BTA relied upon R. C. 5747.51(E)(3), which provides, in part: "(E) In addition to the deductions made pursuant to division (D) of this section, revenues accruing to the general fund * * * from the following sources shall be deducted from the combined total of expenditures * * * (3) Estimated unencumbered balances as shown on the tax budget as of the thirty-first day of December of the current year in the general fund * * * ."

the BTA could base its decision. Rather, appellees argue that the amount included in the contingency account exceeded the statutory limits;[4] therefore, the entire fund should be included as part of the unencumbered balance as of December 31, 1976.

Given the specific authorization for such accounts in the Revised Code and the absence of any evidence in the record as to the status of the funds in this account, we find that the BTA's decision to deduct them in their entirety is unreasonable and unlawful. However, to the extent that this fund exceeded the statutory limit, Springfield should not be benefited thereby. Accordingly, the decision of the BTA in this regard is reversed.

## B.

Springfield also takes issue with the BTA's deduction of $452,800 from its estimated expenditures.

Springfield's estimated 1977 budget included a fund denominated as the "Federal Grant & Program Funds." The total receipts shown in this account were $4,728,000, of which $1,500,000 represented monies received from the federal government. The remaining monies in the account were derived from note sales and unspecified transfers. Also included on the federal grants page of Springfield's budget was an expenditure of $452,800 for capital improvements.

The BTA, pursuant to R. C. 5747.51(D)(1),[5] deducted the sum of $452,800 from Springfield's estimated expenditures for 1977.

The BTA concluded that the monies received from the federal government were in the nature of "trust funds" and eliminated these amounts from both the expenditures and revenues calculation. Springfield, concedes the appropriateness of this action. However, it contends that since the federal grants are "trust funds," they are not included in the budget, and, *a*

---

[4] R. C. 5705.29(A)(1) specifically provides that a tax budget "may include a contingent expense not designated for any particular purpose." However, this section also limits the contingency fund, in this case, to "three percent of the total amount of appropriations for current expenses."

[5] R. C. 5747.51, in relevant part, states: "(D) From the combined total of expenditures calculated pursuant to division (C) of this section, the commission shall deduct the following expenditures, if included in these funds in the tax budget:

"(1) Expenditures for permanent improvements * * * ."

*fortiori,* expenditures therefrom for permanent improvements are not required to be deducted.

In reviewing the allocation of the local government fund by the BTA, this court will intervene "only when it is apparent that the board has proceeded in an unreasonable or unlawful manner." *Bd. of Co. Commrs.* v. *Willoughby Hills* (1968), 14 Ohio St. 2d 163, 164; *Cleveland* v. *Budget Comm.* (1976), 47 Ohio St. 2d 27, 29. Here, we are not so convinced. Although the fund in question was called "Federal Grant & Program Funds," it appears that only approximately one-third of the funds deposited therein were derived from the federal government. Thus, even if the federal funds were to be excluded, there were sufficient local revenues deposited in the fund to pay for the proposed capital improvements. Hence, it is far from clear that these improvements were to be paid from federal funds rather than local funds. Under these circumstances, we decline to hold that the BTA's action in this regard was unreasonable or unlawful.

## C.

In making its calculation of Springfield's "relative need," the Clark County budget commission deducted $881,900 from Springfield's combined total of expenditures pursuant to R. C. 5747.51(E)(1).[6] Upon appeal, the BTA adopted this figure without discussion. Springfield contends that this constitutes error.

Springfield was authorized to levy an inside millage of 3.3 mills. Had it done so, the amount so levied would have totaled $881,900. However, Springfield requested and, in fact, levied a tax of only 2.3 mills. Thus, it received only $614,658 from the tax levied. As a result, Springfield was credited with receipt of $267,242 more than it would actually receive. Its "relative need" was thus reduced by a corresponding amount.

Appellees concede that Springfield did not, in fact, levy a tax of 3.3 mills. Nevertheless, appellees argue that Springfield could lawfully have done so and, under the circumstances of this case, to allow Springfield to receive a larger allocation

---

[6] R. C. 5747.51(E)(1) provides that "[t]axes levied within the ten-mill limitation" are also to be deducted from the combined total of expenditures in determining "relative need."

from the local government fund constitutes a "gross inequity" and requires the fund's other participants to "subsidize the city's economy." We are not unsympathetic towards appellees' arguments. However, we believe that if there is a problem in this regard, the solution must come from the General Assembly and not this court.

"The definition of 'levy' in Webster's Third New International Dictionary is 'the imposition or collection of an assessment, tax. * * * ' " *Grabler Mfg. Co.* v. *Kosydar* (1973), 35 Ohio St. 2d 23, 33. Springfield neither imposed nor collected a tax of 3.3 mills. We hold that the phrase "[t]axes levied within the ten-mill limitation" refers to those taxes actually imposed or collected, not those which may or could have been levied. Accordingly, the decision of the BTA in this regard is unreasonable and unlawful and is reversed.

## D.

The issues raised in Springfield's propositions of law Nos. 4 and 5 are closely related and are, therefore, discussed together herein.

It is undisputed that Springfield received $8,078,000 in income tax receipts and, in accordance with this court's prior decision in this matter (61 Ohio St. 2d 132), only 30 percent of such amount was considered as "unvoted". This revenue from the "unvoted" tax was deducted from estimated expenditures pursuant to R. C. 5747.51(E)(4).[7]

Upon receipt, all the income tax monies were deposited in an income tax fund. Thereafter, 80 percent of the income tax receipts was transferred to the general fund and 20 percent was transferred to the permanent improvement fund. In calcu-

---

[7] In relevant part, R. C. 5747.51 provides as follows:

"(E) In addition to the deductions made pursuant to division (D) of this section, revenues accruing to the general fund and any special fund considered under division (C) of this section from the following sources shall be deducted from the combined total of expenditures calculated pursuant to division (C) of this section:

" * * *

"(4) Revenue, including transfers, shown in the general fund and any special funds other than special funds established for road and bridge; street construction, maintenance, and repair; state highway improvement; and for gas, water, sewer, and electric public utilities, from all other sources except those that a subdivision receives from an additional tax or service charge voted by its electorate or receives from special assessment or revenue bond collection. * * * "

lating Springfield's "relative need," the BTA treated the entire amount so transferred as revenue to the funds receiving the transfers and as expenditures from the income tax fund.

Springfield argues, first, that the BTA's action constitutes a duplication of the deduction, thus reducing its "relative need" by the amount of the receipts—$8,078,000. Thus, Springfield argues that none of the funds so transferred should be deducted. In the alternative, Springfield urges that only that portion representing the "unvoted" taxes should be deducted.

Springfield's first contention must fail simply because R. C. 5747.51(E)(4) clearly requires that "[r]evenue, including transfers, shown in the general fund and any special funds" shall be deducted from the combined total of expenditures.

In support of its alternative argument, Springfield claims this court's decision in *Waterville* v. *Spencer Twp.* (1974), 37 Ohio St. 2d 79, is dispositive. In *Waterville*, we held at page 84, that "[i]n determining a subdivision's relative need for current operating funds, the * * * [BTA] is explicitly forbidden from deducting revenue derived from a local voted tax and shown in the subdivision's general fund. * * * Pursuant to R. C. 5747.51(E)(4), those portions of the voted income taxes which were placed in the general fund * * * can not be deducted from appellants' estimated expenditures to determine the relative need of each for current operating funds."

Springfield's reliance upon our holding in *Waterville* is misplaced. First, in *Waterville* the sums in question were deposited directly in the subdivision's general fund. Hence, there was no transfer involved. Second, in calculating Springfield's estimated expenses, the BTA treated the entire amount transferred from the income tax fund as an expense to that fund and as revenue to the funds to which the transfers were made. Clearly, if Springfield had been given credit for the entire expense but were charged with receiving as revenue only 30 percent of the amount transferred there would be an impermissible imbalance in the equation. To adopt Springfield's arguments would be tantamount to sanctioning a subdivision doubling its voted tax credit by mere legerdemain. Accordingly, the BTA's decision in this regard was neither unreasonable nor unlawful.

In its last proposition of law, Springfield contends that the BTA has overstated the "relative need" of Clark County. In calculating the county's "relative need", the BTA, pursuant to R. C. 5747.51(E)(1), deducted from the county's estimated expenditures the taxes levied within the ten-mill limitation. However, the county did not include these tax receipts in its general fund revenues and, correspondingly, the BTA made no deduction pursuant to R. C. 5747.51(E)(4). Springfield asserts that this was error. However, we do not agree.

It appears that since the funds were deposited directly into the general fund, there was no "transfer" within the meaning of R. C. 5747.51(E)(1).

More importantly, R. C. 5747.51(E)(4) requires the deduction of "[r]evenue, including transfers, shown in the general fund * * * from all other sources except those that a subdivision receives from an additional tax * * * voted by its electorate * * * ." We hold that, as reasonably interpreted, the phrase "from all other sources" in R. C. 5747.51(E)(4) refers to those sources not listed in the preceding subdivisions of R. C. 5747.51(E). The inside millage having been once deducted, and there being no evidence of a subsequent transfer of these monies, we decline to disturb the BTA's decision on this issue.

## II.

In case No. 81-884, Clark County, Bethel and Moorefield Townships contend that the BTA has overstated Springfield's "relative need" by the sum of $1,438,732.

Included in Springfield's 1977 tax budget was a fund denominated as the "Community Development Fund." This fund was comprised of money received from federal grants and was to be used for certain unspecified, capital improvements. In calculating Springfield's "relative need" the BTA determined that the "Community Development Fund" constituted a "trust fund" and, accordingly, did not deduct the amount contained in this fund from Springfield's estimated expenditures.

Appellants herein argue, first, that the BTA improperly designated these federal revenues as "trust funds," and, sec-

ond, that since the purpose of the local government fund allocation is to permit local subdivisions to meet current operating expenses, the BTA was required to deduct from Springfield's estimated expenditures any amount set aside for permanent improvements.

The determination of an entity's estimated expenditures is the first calculation made in arriving at "relative need." R. C. 5747.51(D) provides that the combined total of expenditures includes transfers from the general fund and any special funds. The critical question presented by this appeal is whether the fund in question is a "special fund" or a "trust fund." If it is a "special fund," then the amounts contained therein are included in expenditures, but no deduction may be made for amounts expended on permanent improvements. Thus, if appellants prevail, then Springfield's "relative need" would be decreased by the balance reflected in the fund.

Appellants correctly note that the term "trust fund" neither appears in R. C. 5747.51 nor is it defined therein. Similarly, however, "special fund" is not defined in that statute. Both terms, however, are defined in R. C. 5705.09, and it is to this statute that the BTA referred in reaching its decision herein.

In pertinent part, R. C. 5705.09 provides that "[e]ach subdivision shall establish the following funds:
" * * *

"(H) A trust fund for any amount received by a subdivision in trust."

A review of the record discloses that the funds in question were not required to be used for a particular purpose. Indeed, Springfield may choose the manner in which, and the projects upon which, it desires to expend these funds. This discretionary power is inconsistent with the concept of "a particular purpose." Moreover, there is sufficient evidence from which the BTA could conclude that these funds were trust funds rather than a special fund as that term is used in R. C. 5747.51.

Appellant also argues that even if the "Community Development Fund" constituted a trust fund, R. C. 5747.51 (D)(1) requires that expenditures for permanent improvements made from such fund must be deducted from the

combined total of expenditures in determining "relative need." This argument is inapposite. R. C. 5747.51(D) requires such deductions only if such funds are included in the tax budget. In this case, they were not. Thus, no deduction is required.

Premised upon the foregoing, we hold that the decision of the Board of Tax Appeals in case No. 81-881 is unreasonable and unlawful only to the extent set forth in parts IA and C hereof, and that the same should be affirmed in part and reversed in part and remanded for action not inconsistent herewith. The Board of Tax Appeals' decision in case No. 81-884 being neither unreasonable nor unlawful is hereby affirmed.

*Judgment accordingly.*

CELEBREZZE, C. J., W. BROWN, SWEENEY, LOCHER, HOLMES, C. BROWN and KRUPANSKY, JJ., concur.