CITY OF CINCINNATI, APPELLEE AND CROSS-APPELLANT, *v.* BUDGET
COMMISSION OF HAMILTON COUNTY; HAMILTON COUNTY ET AL.,
APPELLANTS AND CROSS-APPELLEES.

[Cite as Cincinnati *v.* Budget Comm. of Hamilton Cty. (1986),
25 Ohio St. 3d 137.]

(Nos. 85-1443 and 85-1467—Decided July 23, 1986.)

*Richard A. Castellini,* city solicitor, and *Nancy H. Simmons,* for appellee and cross-appellant city of Cincinnati.

*Arthur M. Ney, Jr.,* prosecuting attorney, and *Thomas J. Scheve,* for appellant and cross-appellee Hamilton County.

*Wood & Lamping* and *Robert P. Malloy,* assistant city solicitor, for appellant and cross-appellee city of Springdale.

*Robert G. Kelly,* for appellant and cross-appellee city of Norwood.

*Per Curiam.* The questions before this court concern whether each of the decisions of the Board of Tax Appeals relative to local subdivisions is arbitrary, unreasonable, or contrary to law, under the standards pronounced by this court in *Bd. of Cty. Commrs.* v. *Budget Comm.* (1946), 146 Ohio St. 636, 639-641 [33 O.O. 108], and *Bd. of Cty. Commrs.* v. *Willoughby Hills* (1968), 14 Ohio St. 2d 163, 164 [43 O.O.2d 257]. For the reasons stated below, we find that two of the decisions below are not arbitrary, unreasonable, or contrary to law. We reverse those parts of the order below which required the inclusion of several of Cincinnati General Hospital's budget items in Hamilton County's relative need determination, and which allowed the city of Norwood's deficit to be included in that city's unencumbered balance of general funds.

I

The first issue is whether the Board of Tax Appeals' reversal of the budget commission's decision to exclude federal revenue sharing funds from the "relative need" formula is arbitrary, unreasonable, or contrary to law. It is clear that, in determining each subdivision's expenditures, the budget commission must include "expenditures, including transfers, from the general fund and any special funds other than special funds established

for road and bridge; street construction, maintenance, and repair; state highway improvement; and for gas, water, sewer, and electric public utilities operated by a subdivision, as shown in the subdivision's tax budget for the ensuing calendar year." R.C. 5747.51(C).

The federal general revenue sharing funds do not fall within any of these specifically *excluded* "special funds," since federal law allows these funds to be used for *any* purpose permissible under state and local law, except lobbying, and cannot require that they be used for street repair, maintenance, etc. See Section 6715, Title 31, U.S. Code; 31 C.F.R., Sections 51.41 and 51.43. It is also clear that such funds are not special funds which would be *included* in the formula since "special funds" are those funds "* * * derived from a source other than the general property tax, which the law *requires* to be used for a particular purpose." (Emphasis added.) R.C. 5705.09(F). The discretionary power of the subdivision to select the manner in which it desires to expend its federal revenue sharing funds is inconsistent with the concept of "particular purpose," inherent in the term "special funds," *Springfield* v. *Bethel Township* (1982), 69 Ohio St. 2d 500, 507, and, thus, disqualifies these federal funds from this particular inclusion in the formula.

The budget commission must include general funds in its "relative need" determinations. R.C. 5747.51(C). While there is no statutory definition of "general funds," this term can be understood as including revenues from sources not otherwise designated by the statutes. Hamilton County and Springdale argue that federal funds are "trust funds," not "general funds," and can be properly excludable from the calculation of a subdivision's relative need under *Springfield, supra.* There, this court affirmed, as not contrary to the weight of the evidence, the Board of Tax Appeals' decision to exclude from Springfield's expenditure calculation a "Community Development Fund," comprised of federal grants for unspecified capital improvements, on the basis of its finding such to be a trust fund. Id. at 507. However, even in that case, the federal revenue sharing funds *were* included in the formula so that it is not controlling authority to the issue at hand.

We are not persuaded by arguments that the federal revenue sharing funds are "trust funds," and thus excludable under *Springfield, supra,* simply because former R.C. 131.32(B)(2) requires subdivisions to account for the proceeds of all federal monies received, or because 31 C.F.R., Section 51.101 requires that each recipient subdivision keep the funds in a separate account which it denominates a "trust fund." Such arguments would exalt form over substance as the term is obviously used in accordance with accounting principles in order to provide a tracing mechanism for the federal funds — but not to exclude such funds from R.C. 5747.51 calculations.

We agree with the Board of Tax Appeals' reasoning that: "* * * The purpose of the formula is a determination of current operating expenses,

since deductions for permanent improvements and other non-current items are mandatory. The statutory definition of current expenses to mean lawful expenditures is extremely broad enough to include expenditures made with Federal Revenue Sharing funds. The fact that these funds are a trust fund for purposes of R.C. 5705.09 is not controlling. No reference is made to that code section in R.C. 5747.51, although other terms are specifically defined therein by reference to other code sections. See R.C. 5747.51(D)(1) and 5747.51(E)(1)." Additionally, the fact that the federal revenue sharing funds are at the subdivisions' disposal for any lawful purpose convinces us that the board's decision to include such federal funds as "general funds" in the "relative need" formula was not arbitrary, unreasonable, or contrary to law.[1] Of course, any treatment of any of these funds actually used for permanent improvements or other items required to be deducted or excluded must comply with the statutory requirements.

## II

The next issue is that presented by the city of Cincinnati as to whether the Board of Tax Appeals' decision to deduct only $584,978.48 of the $851,900 development account of Hamilton County Park District for permanent improvements was arbitrary, unreasonable, or contrary to law. Because the budget commission must deduct expenditures for permanent improvements under R.C. 5747.51(D)(1), and because the commission has the authority to determine and deduct only the amount *actually* used for permanent improvements, see *Springfield, supra,* at 504, and *Willoughby Hills, supra,* at 164, we find sufficient evidence to support the board's decision. There was, admittedly, conflicting evidence of the proportion of the $851,900 account actually used for permanent improvements: James A. Ballman, comptroller of the Hamilton County Park District from February 1983 to date, testified that although he originally estimated that $647,400 may have been so used, he later calculated the capital improvement expenditures to be $584,978.48; David J. Nurre, supervisor of the Budget and Settlement Department of Hamilton County, testified that if the same procedures used in 1981 were followed in 1982, the $851,900 would have been listed as capital improvements. Resolving this conflicting evidence in its *de novo* proceeding in favor of the more specific information

---

[1] The only case which upheld the board's decision to exclude federal revenue sharing funds from its computation of subdivisions' needs was based on the reasoning that neither R.C. 5705.28 nor any form prescribed by the Bureau of Inspection and Supervision of Public Offices required participating recipients to include such funds in estimates to be filed under that statute. *Russell Twp.* v. *Geauga Cty.* (1976), 47 Ohio St. 2d 19, 23 [1 O.O.3d 12]. Since R.C. 5705.28 is not at issue in this case (and has since been amended), and since the present form prescribed by the Bureau of Inspection and Supervision of Public Offices now does require federal revenue sharing funds to be included on the submitting document, we find that case inapposite to the case *sub judice.*

given by a witness who is integrally involved in the finances of the subdivision in question is clearly within the authority granted the board by R.C. 5703.02, 5705.37, *Brooklyn* v. *Cuyahoga Cty. Budget Comm.* (1965), 2 Ohio St. 2d 181 [31 O.O.2d 398], paragraph two of the syllabus, and *Springfield* v. *Bethel Township* (1980), 61 Ohio St. 2d 132, 133-134 [15 O.O.3d 165].

Even though the stipulations between Cincinnati and Hamilton County mentioned a $647,440 figure, the parties merely stipulated that that was the amount which park district personnel had most recently represented to the budget commission officers as being used for capital improvements. Such a stipulation does not preclude presentation of further evidence on point, especially in light of the parties' agreement that future depositions may be taken and submitted to the Board of Tax Appeals to be considered as evidence. A *de novo* hearing requires that all available evidence be considered and that the decision not be unreasonable in light thereof. *Russell Twp.* v. *Geauga Cty.* (1976), 47 Ohio St. 2d 19, at 25 [1 O.O.3d 12]. Additional authority for the proposition that "* * * [t]he findings of the board of tax appeals shall be substituted for the findings of the commission" is provided by R.C. 5705.37. We find nothing unreasonable or unlawful in the Board of Tax Appeals' deduction for the park district's permanent improvements.

## III

A third issue is raised by Hamilton County as to the inclusion of Cincinnati General Hospital's expenses in Hamilton County's relative need calculation. In order to reach this issue, we must first address the question of whether the Board of Tax Appeals may decide the merits of an issue not contained in the notice of appeal submitted to it, as the notice in the case *sub judice* made no reference to the hospital's expenses' inclusion in the calculation of the county's relative need.

## A

In *Springfield* (1980), *supra,* at 133, this court rejected the Board of Tax Appeals' argument that R.C. 5747.55 limits its authority to deciding only the specific issues raised in the notice of appeal. There, we concluded that the General Assembly did not intend to limit the scope of the hearing before it. *Id.* at 134. Although this decision does not necessarily require the Board of Tax Appeals to hear any issue raised by anyone at any time, it does require it to review the facts and law germane to its determination. It is certainly not unlawful or unreasonable for the board to consider the hospital budget question when it is to determine, *de novo,* the fairness of that county's "relative need" calculation.

## B

We now turn to the question of what part, if any, of the hospital's budget may lawfully be included in the county's "relative need" determination. The budget commission included capital improvement and debt

charge items from the budget of Cincinnati General Hospital in determining the county's relative need. The Board of Tax Appeals found that the county was not entitled to a recalculation of its need with these items excluded. It also found that, although the evidence showed that the hospital "* * * provides certain services to indigent people and receives funds appropriated by the county for this purpose," it "failed to prove the legal relationship between the county and the hospital." These findings, especially the failure to prove a legal relationship, along with the evidence that the levy was meant to supplement the general fund of the county "to provide health and hospitalization *services,* including the Cincinnati General Hospital * * *'" (emphasis added) and that the deposits were made solely to the hospital's current operating expenses account, indicate to us, contrary to the board's conclusions, that there is insufficient evidence to justify the deductions of the hospital's permanent improvements and debt charges from the county's expenditures. Due to the lack of evidence supporting the decisions below, we must reverse and remand this issue to the Board of Tax Appeals for reconsideration.

## IV

The final question presented for review is whether the budget commission, and the Board of Tax Appeals, properly allowed the city of Norwood to list a deficit balance as a part of calculating its current expenses and its relative need. The city of Cincinnati argues that nothing in R.C. Chapter 118, dealing with local fiscal emergencies, requires any listing of expenses different from that required by R.C. 5747.51.

R.C. 5747.51(E)(3) requires a deduction from the subdivision's list of current expenditures for "[e]stimated unencumbered balances as shown on the tax budget as of the thirty-first day of December of the current year in the general fund * * *." The Hamilton County Budget Commission issued a certificate of estimated resources when the city of Norwood submitted its 1982 budget, based on the representation that such was in conformity with the financial plan of Norwood. While R.C. 118.14 provides that "* * * [a]ny such * * * submission of a financial plan * * * shall be, effective and binding upon the * * * county budget commission * * *," this section merely requires that accurate information as to any deficit be submitted to the budget commission. No law specifically mandates that the budget commission allocate the local government fund so as to reduce all the other fiscally responsible subdivisions' shares simply because one subdivision has been fiscally irresponsible. In fact, R.C. 5747.51(B) specifically authorizes the budget commission to inquire into the claimed needs of any subdivision or to adjust claimed needs to reflect actual needs for the purpose of apportioning the undivided local government fund. It is not an abuse of discretion for the budget commission to take Norwood's list of estimated resources into account. In *Russell Twp., supra,* at 22-23, we held the following:

"Nor do we see that the so-called deficit budget presented by the county in any way violates statute or case law which concerns allocations of the local government fund. See *Cuyahoga [Cty.]* v. *Budget Comm.* (1971), 27 Ohio St. 2d 22 [56 O.O.2d 12]. Information required by R.C. 5705.29 is furnished in contemplation that any budgeted deficit will be brought into balance by the actions of the budget commission * * *. [R.C. 5747.51(B)] and applicable case law specifically authorize the commission to adjust claimed need to reflect actual need, as was done herein by the Board of Tax Appeals in its *de novo* hearing. *Brook Park* v. *Budget Comm.* (1968), 16 Ohio St. 2d 119 [45 O.O.2d 464]; *Bd. of Co. Commrs.* v. *Willoughby Hills* (1968), 14 Ohio St. 2d 163 [43 O.O.2d 257]."

Although we find that the budget commission has discretion to consider a subdivision's financial predicament, unless it is shown that its deficits are the result of a bona fide unforeseeable emergency, we hold that it is an abuse of such discretion to allow a political subdivision's existing deficits to disturb allocations of the local government fund. To hold otherwise would punish the financially responsible political subdivisions, contrary to the legislative tone set by R.C. 118.02(A). There, the General Assembly made the determinations that failure to maintain fiscal integrity adversely affects the health, safety, and welfare of the public and that such constitutes an abuse of the municipalities' powers.

In the case *sub judice,* the city of Norwood's funds showed deficit balances totalling $2.3 million as of December 31, 1979. This exceeded the one-twelfth of the municipality's General Fund budget for the preceding year, the state's test for whether a fiscal emergency exists, by $1,069,493.88. On March 31, 1980, the one-twelfth figure was still exceeded by $929,916.57, meaning a net total deficit of $1,799,516.09. According to the State Auditor's press release dated May 7, 1980, which declared that the city of Norwood was in a state of fiscal emergency, previous audits of the city had contained recommendations, which were never acted upon favorably, to replace funds that had been improperly transferred. Given these facts and the fact that the city of Norwood's certificate of estimated resources for the fiscal year beginning January 1, 1982 listed its General Fund total as $6,538,280.55, we find that the budget commission could not have found a bona fide unforeseeable emergency and it abused its discretion by taking the city's deficit balances into account in its allocation of the local government fund.

We thus affirm the Board of Tax Appeals' inclusion of the federal general revenue sharing funds in its relative need determinations, and its deduction of only $584,978.48 of the $851,900 development account of Hamilton County Park District. We remand the issue of what part of the hospital's budget may lawfully be included in Hamilton County's relative need determination for further proceedings in accordance with this opin-

144

ion. Finally, we reverse the board's inclusion of the city of Norwood's deficit in determining its relative need.

*Judgment accordingly.*

SWEENEY, LOCHER, HOLMES, C. BROWN, DOUGLAS and WRIGHT, JJ., concur.

CELEBREZZE, C.J., concurs in judgment only.

