CITY OF CANTON, APPELLANT AND CROSS-APPELLEE, *v.* STARK COUNTY BUDGET COMMISSION; STARK COUNTY BOARD OF COMMISSIONERS, APPELLEE AND CROSS-APPELLANT.

[Cite as Canton *v.* Stark Cty. Budget Comm. (1988), 40 Ohio St. 3d 243.]

(No. 86-1687—Submitted November 15, 1988—Decided December 30, 1988.)

*Richard A. Horning,* for appellant and cross-appellee.

*Vorys, Sater, Seymour & Pease, Raymond D. Anderson, Aaron P. Rosenfeld, Matthew J. Barrett; Jacob F. Hess, Jr.,* for appellee and cross-appellant.

*Per Curiam.* Under R.C. Chapter 5705, political subdivisions prepare annual tax budgets and file them with the county auditor. R.C. 5705.28 *et seq.* Under R.C. 5747.51(B), the auditor presents the budgets to the county budget commission. The budget commission then reviews the budgets and allocates the county's undivided local government fund among the various subdivisions according to their relative need. R.C. 5747.51(B) through (I). This fund consists of money due the county from the state to assist the county and its subdivisions in their current operations.

The budget commission holds hearings after which it determines the

relative need of each subdivision. R.C. 5747.51(B). To do this, it totals each subdivision's qualified estimated expenditures and deducts its statutorily specified deductions. R.C. 5747.51(C), (D) and (E). The budget commission then totals all the relative needs of all the subdivisions participating in the fund and divides the fund by this total relative need. R.C. 5747.51(G). This quotient, the relative need factor, is applied to each subdivision's relative need to determine that subdivision's share of the fund. R.C. 5747.51(H). Adjustments are made so that the county's share does not exceed a certain designated percentage of the total fund, R.C. 5747.51(H), and each subdivision receives at least its statutory minimum share. R.C. 5747.51(I).

Budget commission actions taken pursuant to R.C. 5747.51 are appealable to the BTA under R.C. 5747.55 "* * * in the manner and with the effect provided in section 5705.37 of the Revised Code * * *." Under R.C. 5705.37, the BTA hears the case *de novo,* and its findings are substituted for those of the budget commission. *Brooklyn* v. *Cuyahoga Cty. Budget Comm.* (1965), 2 Ohio St. 2d 181, 31 O.O. 2d 398, 207 N.E. 2d 764, paragraph two of the syllabus.

We will discuss Canton's two remaining propositions of law and then four of the board of commissioners' propositions of law.[1]

## I. Debt Charge Deductions

In computing Stark County's relative need, the BTA deducted $4,997,966 from the county's authorized expenditures as expenditures for the payment of debt charges. This amount was reflected on Stark Coun-

ty's 1984 tax budget that was submitted to the budget commission. Canton argues that the BTA should have deducted $14,960,046, which is the figure reflected on Stark County's 1984 financial report to the State Auditor. Increasing Stark County's debt charges raises its deductions, reduces its relative need, and reduces its share of the fund.

The board of commissioners responds that Canton did not raise this issue in its notice of appeal to the BTA, or during the proceedings there, and that this court should therefore not consider this question. It also argues that this debt charge amount is simply deducted in the allocation process because it was contained in the estimated expenditures.

According to *Cincinnati* v. *Budget Comm. of Hamilton Cty.* (1986), 25 Ohio St. 3d 137, 141, 25 OBR 184, 188, 495 N.E. 2d 396, 400, the BTA, in a local government fund allocation appeal, is required to review the facts and law germane to its determination. Determining the amount of debt charges that are included in estimated expenditures and then deducted is germane to Stark County's relative need. Thus, the BTA properly considered this question.

The BTA, moreover, did not err. R.C. 5747.51(D) provides:

"From the combined total of expenditures calculated pursuant to division (C) of this section, the commission shall deduct the following expenditures, if included in these funds in the tax budget:

"* * *

"(3) Expenditures for the payment of debt charges * * *."

Thus, only the expenditures for the payment of debt charges that are contained in the combined total of estimated expenditures in the tax budget are to be deducted. The BTA

---

[1] Canton dismissed its first proposition. Two of Stark County's six propositions respond to Canton's remaining propositions.

included $4,997,966 for debt charges as part of the total expenditures for Stark County. When it later deducted the same amount, it merely deducted what was contained in the budget. According to this statute, the amount deducted from the combined total of estimated expenditures cannot be greater than the amount included in such total. Even if Stark County had spent more for debt charges, that greater amount was not included in the BTA's determination of estimated expenditures, so a greater deduction was not warranted. Had a greater amount been included, the BTA would have been required to deduct the greater amount.

## II. Poor Relief Reimbursement

Canton next argues that the BTA erred when it stated that the budget commission allocated $1,779,624 to Canton. Canton maintains that the allocation actually was $2,196,543 because the budget commission had withheld $416,919 in poor relief reimbursement for which the BTA failed to account. Since, according to Canton, the BTA found in BTA No. 84-A-15 (a related case on appeal to this court in case No. 87-133) that withholding a poor relief reimbursement was incorrect and ordered that $312,689.28, the amount actually withheld, be returned to Canton, Canton argues that it should have received $104,229.72 more, the difference between the two poor relief amounts. The board of com-

missioners agrees that the BTA stated the wrong amount but contends that the budget commission corrected the error and Canton actually received the disputed amount.

Former R.C. 5113.02 required that the budget commission, in certain cases, reduce the city's share of the local government fund and award that amount to the county to reimburse the county for its poor relief program. In the instant case, the commission initially withheld $416,919 from Canton's allocation. However, according to the BTA decision in BTA No. 84-A-15, the commission apparently reconsidered its earlier action and actually withheld only $312,689.28. Therefore, Canton's share was not reduced by the amount it asserts. Canton actually received $1,883,853.72 under the budget commission's order. Even though the BTA misstated the amount that Canton actually received, Canton was not injured because it received what it alleges it should have.[2]

## III. Consolidation of All Appeals

In its first proposition of law, the board of commissioners argues that the BTA is required, under R.C. 5747.55(E), to consolidate all appeals from the allocation of the undivided local government fund for a particular year. The board of commissioners asserts that the BTA should have consolidated the instant case with three other pending appeals of the 1984

---

[2] Totalling the amounts actually received by Canton confirms this. According to the initial allocation, Canton received $1,779,624, which reflected the base allocation of $2,196,543 reduced by the $416,919 originally ordered to be withheld for poor relief. However, only $312,689.28 was actually withheld, so the true amount received by Canton was $1,883,853.72

($2,196,543 less $312,689.28). Canton then received an additional $2,746,389 in the reallocation made by the BTA. Furthermore, it received $312,689.28 in the BTA's determination in case No. 84-A-15. These amounts total $4,942,932, which is the amount that Canton alleges it should receive.

Stark County undivided local government fund allocation. However, an inspection of the notice of appeal filed in this court discloses that the board of commissioners did not set forth this error.

The board of commissioners' appeal was filed under R.C. 5717.04, which then provided:

"The proceeding to obtain a reversal, vacation, or modification of a decision of the board of tax appeals shall be by appeal to the supreme court * * *.
"* * *

"Such appeals shall be taken within thirty days after the date of the entry of the decision of the board on the journal of its proceedings, as provided by * * * [R.C. 5717.03], by the filing by appellant of a notice of appeal with the court to which the appeal is taken and the board. *Such notice of appeal shall set forth the decision of the board appealed from and the errors therein complained of.* * * *" (Emphasis added.)

This court has consistently required that appellants strictly comply with the statutes providing for appeals. *Lawson Milk Co.* v. *Bowers* (1961), 171 Ohio St. 418, 14 O.O. 2d 217, 171 N.E. 2d 495; *Richter Transfer Co.* v. *Bowers* (1962), 174 Ohio St. 113, 21 O.O. 2d 369, 186 N.E. 2d 832. In each of those cases, the notice of appeal listed errors that were general in nature. Because the notice did not state in definite and specific terms the precise errors claimed, this court concluded it was without jurisdiction and dismissed the appeal. While the instant notice of appeal identifies several particular errors, it does not identify the issue now raised. Therefore, we do not have jurisdiction to review this claimed error.

## IV. Balancing Revenue Amount

In its third proposition, the board of commissioners contends that the BTA erred in calculating Stark County's relative need by using an amount as revenue that the county had added to its estimated revenue solely to balance its budget. It is clear from the testimony that Stark County did not expect to collect this amount.

In its budget, Stark County estimated that it would spend $26,067,912 more than it actually did. Stark County felt compelled to balance estimated expenditures with estimated revenues. Thus, it calculated the difference between estimated expenditures and reliable revenue estimates from other taxes and added the resultant figure to the estimated receipts from property taxes. In 1981, 1982 and 1983, Stark County actually received $6,554,636, $6,710,124, and $7,217,962, respectively, in property taxes. For 1984, Stark County estimated property taxes at $35,285,587. However, Stark County's 1986 tax budget, which reflects tax receipts for 1984, indicates that in 1984 Stark County actually received $7,302,617 in property taxes.

The BTA stated that it was "impossible" to interrelate and compare the numbers contained in Stark County's 1984 tax budget and its 1984 annual financial report to the auditor, to those contained in the county's 1986 tax budget, which reflected actual revenues and expenditures for 1984. The BTA, nevertheless, used Stark County's estimated total expenditures from its 1984 tax budget and deducted an estimated revenue figure approximating the estimated revenues shown in Stark County's budget, which included the "balancing amount."

The board of commissioners argues that the BTA's use of this manufactured revenue estimate is unreasonable and also that it deducted "taxes levied within the 'ten-mill' limitation" twice because the manufactured estimate included these taxes.

The board also argues that the BTA erroneously deducted revenue from voter-approved taxes pertaining to aid to the retarded, the Molly Stark Hospital, and aid to mental health. According to the board of commissioners, these alleged errors result in understating the county's relative need. Canton contends that the BTA's action was proper because the BTA began with Stark County's obviously inflated expenditure estimates and that the inflated revenue estimates simply balanced the inflated expenditures. Canton, though, concedes that the BTA erroneously deducted $18,569,263 as "taxes levied within the ten-mill limitation" twice and revenue from the named voter-approved taxes. However, according to Canton's computations, Stark County's relative need would remain a negative figure, and the county would still be entitled to only its statutory minimum share.

This court has ruled that the BTA has the same duty as the county budget commission in determining the needs of each subdivision. The BTA must review claimed needs, but it must determine what a subdivision's actual needs are. *Bd. of Commrs.* v. *Willoughby Hills* (1967), 12 Ohio St. 2d 1, 41 O.O. 2d 1, 230 N.E. 2d 344, paragraph two of the syllabus. A subdivision's claim that it needs a certain amount for an expenditure does not require a determination that it actually needs that amount. *Id.* at paragraph three of the syllabus. The BTA is to distinguish "wants" stated in the submitted budgets from established needs. *Brooklyn* v. *Cuyahoga Cty. Budget Comm., supra,* at 186, 31 O.O. 2d at 400, 207 N.E. 2d at 767.

In *Bd. of Commrs.* v. *Willoughby Hills, supra,* the BTA determined need based solely on proposed general fund expenditures, with certain adjustments. This court reversed the BTA decision because the BTA

adopted the claimed needs as the actual needs of the subdivision. The BTA appears to have done the same thing in the instant case, even though it stated its awareness of its authority to review actual expenditures under *Cleveland* v. *Cuyahoga Cty. Budget Comm.* (1977), 50 Ohio St. 2d 97, 4 O.O. 3d 207, 362 N.E. 2d 999.

The BTA apparently used, without analysis or discussion, Stark County's estimated expenditures, which were almost double what Stark County actually spent in 1984 and which were greatly in excess of what Stark County had spent in prior years. It then deducted as revenue an amount that apparently included a figure that Stark County had used solely to balance its budget. However, according to *Budget Comm. of Lorain Cty.* v. *Bd. of Tax Appeals* (1964), 176 Ohio St. 98, 26 O.O. 2d 442, 197 N.E. 2d 803, paragraph two of the syllabus, and *Springfield City Comm.* v. *Bethel Twp.* (1982), 69 Ohio St. 2d 500, 503-504, 23 O.O. 3d 428, 430, 432 N.E. 2d 830, 833-834, only the amount of revenue that can actually be expected to be collected may be deducted. Thus, the BTA apparently erred: (1) when it adopted claimed needs for actual needs; and (2) when it deducted a revenue amount that the county admittedly had no expectation of collecting.

We state that the BTA *apparently* committed these errors because the BTA failed to state why it chose the figures it did. We cannot, with certainty, understand the BTA's conclusions.

In *Cleveland Pub. Library* v. *Cuyahoga Cty. Budget Comm.* (1986), 28 Ohio St. 3d 390, 394, 28 OBR 448, 451, 504 N.E. 2d 421, 424, we stated that this court has a "* * * duty to affirm reasonable, and reverse unreasonable, determinations, which duty can be performed only when the board's findings as to actual needs of the * * * [political subdivision] are in

its decision." We hold that the BTA acted unlawfully in failing to set forth the basis of its determination with specificity. Thus, we must reverse and remand this matter to the BTA. Furthermore, we hold that the BTA may not adopt claimed needs for actual needs or deduct a revenue amount that a county has no expectation of collecting. In any event, the BTA should give effect to Canton's concession that $18,569,263 should not have been deducted.

## V. Public Improvement Expenditures

The budget commission deducted $8,800,000 from Stark County's estimated expenditures as expenditures for permanent improvements. The BTA totalled all departmental budget requests for equipment and capital improvements and deducted this amount, $15,742,531 (in addition to other permanent improvement expenditures in special funds) from Stark County's estimated expenditures.

In proposition four, the board of commissioners objects, arguing that there was no proof that all these items had useful lives of five years or more, and that, therefore, these items cannot qualify as "permanent improvements" under R.C. 5705.01(E). Canton points out that all the figures used by the BTA are in the budget submitted by Stark County and argues that they were properly deducted.

Under R.C. 5747.51(D)(1), expenditures for "permanent improvements," as defined in R.C. 5705.01(E), are to be deducted from estimated expenditures. R.C. 5705.01(E) states:

" 'Permanent improvement' or 'improvement' means any property, asset, or improvement with an estimated life or usefulness of five years or more, including land and interests therein, and reconstructions, enlargements, and extensions thereof having an estimated life or usefulness of five years or more."

First, we hold that this issue was properly raised under *Cincinnati* v. *Budget · Comm. of Hamilton Cty.,* *supra,* even though Canton did not specifically raise it in its notice of appeal to the BTA. We note that Canton's proposed calculation of Stark County's relative need, which it submitted to the BTA, reflected a higher expenditure for permanent improvements for Stark County than the expenditures amount adopted by the budget commission. Contrary to the board of commissioners' argument, this issue was correctly before the BTA.

Next, as Canton points out, the BTA extracted these numbers from the departmental budget requests, submitted by the board of commissioners, that were part of Stark County's budget. A review of these requests reveals that these figures are in fact contained in the budget.

In *Cuyahoga Cty.* v. *Cuyahoga Cty. Budget Comm.* (1971), 27 Ohio St. 2d 22, 56 O.O. 2d 12, 272 N.E. 2d 95, syllabus, this court stated:

"Where, upon appeal to the Board of Tax Appeals, the record of the proceedings of the county budget commission allocating the local government fund is incomplete, a subdivision which does not adduce further proof of its relative actual needs to the Board of Tax Appeals by direct testimony before the board, or by stipulation, deposition, or otherwise, is not in a position to complain that the allocation by the board, based upon that record, is unreasonable."

Under that case, the board of commissioners had the burden to prove which expenditures were for improvements whose useful lives exceeded five years and which ones were not. The

board of commissioners failed to do this, and it is not in a position to complain that the BTA's determination is unreasonable.

## VI. Recomputing All Subdivisions' Relative Needs on Appeal

In its sixth proposition, the board of commissioners argues that, under R.C. 5747.51(G), the BTA hears the appeal of a local government fund allocation *de novo* and must compute a "relative need factor" for all the subdivisions that participated in the fund. Canton responds that the fund to be allocated is the total amount received by the parties to the appeal and that the BTA need only allocate this amount between the parties.

R.C. 5747.55 provides for the appeal of the budget commission's allocation. Divisions (D) and (E) state:

"(D) Only the participating subdivisions named pursuant to division (C) of this section [participating subdivisions that the complaining subdivision believes received more than their proper shares] are to be considered as appellees before the board of tax appeals and no change shall, in any amount, be made in the amount allocated to participating subdivisions not appellees.

"(E) The total of the undivided local government fund to be allocated by the board of tax appeals upon appeal is the total allocated by the budget commission to those subdivisions which are appellants and appellees before the board of tax appeals."

The clear meaning of these provisions is that the amount to be allocated upon appeal is the total amount that had been allocated to the appellant and the appellees before the BTA. No change may be made in the amount allocated to participating subdivisions that are not appellees before the BTA. This interpretation of R.C. 5747.55

is reflected in past decisions of this court. In *Waterville* v. *Spencer Twp.* (1974), 37 Ohio St. 2d 79, 66 O.O. 2d 189, 307 N.E. 2d 542, seven separate notices of appeal were filed with the BTA by seven dissatisfied subdivisions. These appeals named either Lucas County or the city of Toledo, or both, as appellees. Also, two of the appealing subdivisions were named appellees by other appellant subdivisions. "Consequently, only ten of the original twenty-three subdivisions which participated in the original allocation by the Lucas County Budget Commission were parties before the Board of Tax Appeals. The total amount allocated to these ten parties by the budget commission was $5,397,376.81, and therefore the Board of Tax Appeals proceeded to reallocate this amount among the ten parties in a *de novo* hearing as provided by R.C. 5747.55 and 5705.37." *Id.* at 79, 66 O.O. 2d at 189, 307 N.E. 2d at 544.

Furthermore, in *Berea City School Dist.* v. *Cuyahoga Cty. Budget Comm.* (1979), 60 Ohio St. 2d 50, 14 O.O. 3d 209, 396 N.E. 2d 767, this court noted that the General Assembly, when it enacted R.C. 5747.55, had explicitly rejected the earlier procedures in which the appellant before the BTA was required to name each subdivision within the county as an appellee. The court held that under R.C. 5747.55, an appellant need designate as appellees only those subdivisions which the appellant believes received excessive shares. According to *Berea,* if another subdivision perceives unfairness, that subdivision must bring its own appeal. *Id.* at 54-55, 14 O.O. 3d at 212, 396 N.E. 2d at 770. Under this authority, the BTA dealt with the correct amount and was not required to compute a new relative need factor for all the participating subdivisions that are not appellees.

Accordingly, the decision of the BTA that apparently adopted claimed needs as actual needs and deducted revenue that the county had no expectation of collecting is hereby reversed and remanded to the BTA for reconsideration. The remainder of the decision is hereby affirmed.

*Decision affirmed in part, reversed in part and remanded.*

MOYER, C.J., SWEENEY, LOCHER, HOLMES, WRIGHT and H. BROWN, JJ., concur.

DOUGLAS, J., concurs in judgment only.

