OPINIONS OF THE SUPREME COURT OF OHIO
     The full texts of the opinions of the Supreme Court of Ohio
are being transmitted electronically beginning May 27, 1992,
pursuant to a pilot project implemented by Chief Justice Thomas
J. Moyer.
     Please call any errors to the attention of the Reporter's
Office of the Supreme Court of Ohio.  Attention:  Walter S.
Kobalka, Reporter, or Deborah J. Whitten, Administrative
Assistant.  Tel.:  (614) 466-4961; in Ohio 1-800-826-9010.
Your comments on this pilot project are also welcome.
     NOTE:  Corrections may be made by the Supreme Court to the
full texts of the opinions after they have been released
electronically to the public.  The reader is therefore advised
to check the bound volumes of Ohio St.3d published by West
Publishing Company for the final versions of these opinions.
The advance sheets to Ohio St.3d will also contain the volume
and page numbers where the opinions will be found in the bound
volumes of the Ohio Official Reports.


City of Lima, Appellee and Cross-Appellant, v. Allen County
Budget Commission et al., Appellants and Cross-Appellees.
[Cite as Lima v. Allen Cty. Budget Comm. (1993),      Ohio St.
3d      .]
Taxation -- Allocation of local government fund -- County's
     Miscellaneous Construction Funds account part of general
     fund balance to be deducted from expenditures in
     determining allocation -- Revenue from unvoted taxes
     deducted from expenditures in determining allocation.
     (No. 92-1259 -- Submitted February 2, 1993 -- Decided May
5, 1993.)
     Appeal and Cross-Appeal from the Board of Tax Appeals,
Nos. 85-D-224 and 85-D-1040.
     This case involves a dispute between the city of Lima and
Allen County over the proper allocation of the Allen County
Undivided Local Government Fund for 1985 and 1986.  Allen
County and the Allen County Budget Commission appeal the
portion of the Board of Tax Appeals' ("BTA") decision in which
the BTA removed the county's Miscellaneous Construction Funds
account balance from the deduction from revenue.  This
effectively increased the county's revenue and reduced its
allocation from the undivided local government fund.
     The city of Lima appeals the BTA's refusal to treat part
of its income tax collections as "voted tax collections" to be
deducted from revenue.  This denied Lima an increase in its
allocation.
     Allen County's Miscellaneous Construction Funds account
was funded through a permissive sales tax, and was formed to
accumulate money to secure matching federal and state funds for
capital improvements.  In budget years 1985 and 1986, the
county planned to use the account funds to build a new jail.
     In the county's budgets for those years, the miscellaneous
construction fund account was deducted from revenue.  The
resulting lower revenue figure served to increase the county's
relative need and, concomitantly, its allocation from the
undivided local government fund vis-a-vis the other political
subdivisions.  The Allen County Budget Commission approved this
treatment of the county's miscellaneous construction funds.

The city of Lima appealed the budget commission's decision to the BTA, naming the county and the budget commission as appellees. The city of Lima argued that the county could spend the money in its Miscellaneous Construction Funds account in whatever manner it chose, and had not proven that it was required to use the account funds for a specific purpose. The BTA agreed, and thus added the amount in the account to the county's revenue, thereby decreasing its relative need and, ultimately, its allocation.

The city of Lima also appealed the budget commission's decision regarding the city's voted-tax deduction from revenue. Lima's City Council approved a three-quarter percent income tax in 1959, which was to expire after five years. However, consistent with Lima's City Charter, a sufficient number of voters filed a petition to force a vote of the electorate on the approval of the tax ordinance. The electorate, nevertheless, approved the ordinance adopting a five-year income tax.

Lima's City Council renewed the income tax in 1964 for another five years, without a vote of the electorate.

In 1966, city council increased the tax to one percent, which tax was to expire on December 31, 1969. This increase also was not voted on by the electorate. Evidently, the one percent income tax continued in effect through passage of successive unvoted ordinances. In 1982, Lima's City Council again adopted a one percent income tax and placed an additional one-half percent tax on the ballot. The electorate approved the one-half percent additional tax in the November 1982 general election.

In Lima's 1985 and 1986 budgets, the city placed the previously adopted three-quarter percent and the recently voted one-half percent income tax revenue collections in the "voted" category. Only voted taxes may be considered as deductions from revenue. The budget commission ruled the three-quarter percent collections to be "unvoted" and increased the city's revenue by this amount. This action decreased Lima's relative need and its allocation. On appeal, the BTA affirmed, ruling that only the one-half percent of the total one and one-half percent income tax had been approved by a vote of the electorate.

The cause is before this court upon an appeal and cross-appeal as of right.

Thompson, Hine & Flory and John T. Sunderland, for appellee and cross-appellant.

Peck, Shaffer & Williams and Shirley L. Mays, for appellants and cross-appellees.

Pfeifer, J. In Canton v. Stark Cty. Budget Comm. (1988), 40 Ohio St.3d 243, 533 N.E.2d 308, this court described the county budget process. Political subdivisions prepare annual tax budgets and file them with the county auditor, and the auditor presents the budgets to the county budget commission. The budget commission reviews the budgets and allocates the county's undivided local government fund among the subdivisions according to each one's relative need.

To determine the relative need of each subdivision, the

budget commission totals each subdivision's qualified estimated expenditures and subtracts its statutorily specified deductions.  The budget commission then totals all relative needs for all the subdivisions participating in the undivided local government fund and divides the fund by this total relative need.  Next, the commission applies this quotient, the relative need factor, to each subdivision's relative need to determine that subdivision's share of the fund.  The commission makes adjustments so that the county's share does not exceed a certain designated percentage of the fund and so that each subdivision receives at least its statutory minimum share.  Id. at 243-244, 533 N.E.2d at 309-310.

Budget commission actions can then be appealed to the BTA, and the BTA hears the case de novo.  The BTA's findings are substituted for those of the budget commission.  Id. at 244, 533 N.E. 2d at 309.

A

Miscellaneous Construction Funds

Allen County argues that it held money in its Miscellaneous Construction Funds account to obtain federal and state matching money for building a jail facility and that the account constituted a special fund.  Pursuant to R.C. 5747.51(E)(3), special funds should not be deducted from expenditures to calculate relative need.  R.C. 5747.51(E) states:

"* * * [R]evenues accruing to the general fund and any special fund considered under division (C) of this section from the following sources shall be deducted from the combined total of expenditures calculated pursuant to division (C) of this section:

"* * *

"(3) Estimated unencumbered balances as shown on the tax budget as of the thirty-first day of December of the current year in the general fund, but not any estimated balance in any special fund considered in division (C) of this section * * * ."

The BTA ruled that the county did not offer proof that the revenues contained in this account were placed there pursuant to statutory procedures as a special fund and that, despite the county's claim that the account was earmarked for a jail, the money was not formally required to be used for a particular purpose.  Consequently, this amount was a part of the general fund balance to be deducted from expenditures.

In Springfield v. Bethel Twp. (1982), 69 Ohio St.2d 500, 506-507, 23 O.O.3d 428, 432, 432 N.E.2d 830, 835-836, this court held that a fund comprised of money received from federal grants to be used for certain, unspecified capital improvements was not a special fund, but a trust fund.  The court determined that the fund in question was not required to be used for any particular purpose and that Springfield could choose the manner in which, and the projects upon which, it spent the money. This discretionary power prevented the fund from being treated as a special fund.

Then, in Cincinnati v. Hamilton Cty. Budget Comm. (1986), 25 Ohio St.3d 137, 138-140, 25 OBR 184, 185-187, 495 N.E.2d 396, 398-399, this court held that federal revenue sharing funds are not excluded "special funds."  Federal law allowed these funds to be used for any purpose permissible under state

and local law, except lobbying, and the federal government could not require that the funds be used for any special purpose. Furthermore, the subdivision had discretion to select the manner in which it would spend the funds.

In this case, the county presented no evidence on how these miscellaneous construction funds had been restricted. Its attorney stated at the BTA hearing that the county had no evidence to present. Allen County attached to its BTA brief an Allen County Board of County Commissioners' resolution manifesting authorization for the county to sign a memorandum with Lima to build a new jail, but that is insufficient to establish that the funds had a special designated purpose. See Cuyahoga Cty. v. Cuyahoga Cty. Budget Comm. (1971), 27 Ohio St.2d 22, 56 O.O. 2d 12, 272 N.E. 2d 95, syllabus.1 Since Allen County failed to prove that its Miscellaneous Construction Funds account was not a special fund, the BTA correctly deducted the account funds from expenditures.

However, Allen County correctly complains that the BTA improperly used its actual Miscellaneous Construction Funds account balance in calculating that deduction. In making its original allocation, the Allen County Budget Commission had used the account's estimated balance. The BTA skewed its revised allocation between the county and the city of Lima when it used the county's actual Miscellaneous Construction Funds balance, but used only estimated figures in determining Lima's General Fund balance. The resulting reallocation was asymmetrical.

According to Cleveland v. Cuyahoga Cty. Budget Comm. (1977), 50 Ohio St. 2d 97, 101, 4 O.O.3d 207, 210, 362 N.E.2d 999, 1002, the BTA may consider actual receipts and expenditures occurring after the submission of the tax budget to the commission. Considering the size of the difference between Allen County's estimated Miscellaneous Construction Funds balance, $31,599.62, and the actual Miscellaneous Construction Funds balance, $1,890,494.40, the BTA acted within its discretion in employing the actual balance. However, the BTA should not have planted itself on both sides of the ledger. The distortion in this case resulting from using Allen County's actual Miscellaneous Construction Funds balance and the city of Lima's estimated General Fund balance in the relative need calculation was unreasonable and therefore unlawful.

If the BTA believed it should use actual balances for the calculations, then it should have obtained actual balances from both parties. The BTA, upon return of this case, may either recalculate the relative need figures by using the estimated balances of the funds of both parties, or it may obtain the actual balances of the funds of both parties and recalculate relative need accordingly.

To the extent that this instruction conflicts with this court's holding in Russell Twp. v. Geauga Cty. (1976), 47 Ohio St. 2d 19, 1 O.O. 3d 12, 350 N.E. 2d 919, the language in Russell Twp. is expressly overruled. Using the 1974 estimated balance for Chester Township and the 1974 actual balance for Russell Township was de minimis in result, given the dollars involved in that case. Mixing Allen County's 1985 and 1986 actual Miscellaneous Construction Funds balances and Lima's

estimated 1985 and 1986 General Fund balances in this case was substantial in result.

The county also complains that Lima received a windfall because only the county and the budget commission were named as appellees. Under R.C. 5747.55, however, only the county's and Lima's allocations constituted the budget to be reallocated. The BTA performed the reallocation correctly according to the statute. Canton v. Stark Cty. Comm., supra, 40 Ohio St. 3d at 249, 533 N.E. 2d at 314.

## B
## Income Tax Revenue

The city of Lima appeals the BTA's determination that a three-quarter percent city income tax originally levied in 1959 is an unvoted tax. Whether a tax is voted or unvoted becomes significant in determining relative need because R.C. 5747.51(E)(4) provides that voted tax revenue is not to be deducted from expenditures. Revenue from unvoted taxes, on the other hand, is deducted from expenditures:

"(E) * * * [R]evenues accruing to the general fund and any special fund considered under division (C) of this section from the following sources shall be deducted from the combined total of expenditures calculated pursuant to division (C) of this section:

"***

"(4) Revenue * * * from all other sources except those that a subdivision receives from an additional tax or service charge voted by its electorate or received from special assessment or revenue bond collection. * * *"

Under New Boston v. Scioto Cty. Budget Comm. (1969), 20 Ohio St. 2d 151, 49 O.O. 2d 478, 254 N.E. 2d 342, the vote by the electorate need not be directly on the additional tax. In New Boston, the electorate approved an amendment to the city charter to authorize the levy of an additional tax, and the city council subsequently approved the tax. This satisfied R.C. 5747.51 (formerly R.C. 5739.23). This court concluded that an electorate does not ordinarily levy a tax; instead, the electorate authorizes a legislative body to levy the tax.

In this case, as to the original three-quarter percent tax, the referendum process undergone in 1959 appears to be similar to the process undergone in New Boston. Lima City Council had the authority to adopt up to a one percent income tax without a vote of the people. R.C. 718.01.(127 Ohio Laws 91, effective Sept. 17, 1957.) Lima enacted a three-quarter percent tax. However, under Lima's Charter, the ordinance enacting the tax underwent a referendum, which resulted in approval of the ordinance.

Nevertheless, this electorate-approved ordinance expired after five years. City council renewed it in 1964 and succeeding years without a vote of the electorate. Thus, the original ordinance, having expired in 1964, was not the tax levied in budget years 1985 and 1986. The tax collected then had been approved only by council and was, thus, unvoted. Accordingly, the BTA correctly deducted this unvoted revenue from expenditures.

Consequently, we affirm the BTA's decision in part, and remand this cause to the BTA for a reallocation of the 1985 and 1986 undivided local government fund that is consistent with

this opinion.

                                    Judgment accordingly.

     Moyer, C.J., A.W. Sweeney, Douglas, Wright,  Resnick and
F.E. Sweeney, JJ., concur.


FOOTNOTE
1  This court takes judicial notice that a new jail was in fact
built in Allen County some time after 1985.  However, no
mention was made of that fact on the record, and we have no way
of knowing how the facility was funded.