THE STATE EX REL. TAXPAYERS FOR WESTERVILLE SCHOOLS ET AL. *v.*

FRANKLIN COUNTY BOARD OF ELECTIONS ET AL.

[Cite as *State ex rel. Taxpayers for Westerville Schools v. Franklin Cty. Bd. of Elections,* 133 Ohio St.3d 153, 2012-Ohio-4267.]

*Election law—Mandamus—Definition of "rate of levy" on property—"Rate of levy" refers to the amount of the millage approved by taxpayers and not the amount of taxes actually paid—Writ denied.*

(No. 2012-1518—Submitted September 18, 2012—Decided September 20, 2012.)

IN MANDAMUS.

_____

**Per Curiam.**

**{¶ 1}** This is an expedited election case in which relators request a writ of mandamus to compel respondent Franklin County Board of Elections to submit a levy-decrease question to the electorate at the November 6, 2012 general election. Because relators, Taxpayers for Westerville Schools and the committee members representing the petitioners supporting the issue, have not established their entitlement to the requested extraordinary relief in mandamus where the voter-approved levy did not increase the rate of the preexisting voter-approved levies, we deny the writ.

## Facts

**{¶ 2}** In 1972, Westerville City School District voters approved a 1.6-mill levy, and in 1979, district voters approved a 9.8-mill levy. The combined millage for these levies was 11.4 mills.

**{¶ 3}** On August 3, 2009, intervening respondent Westerville City School District Board of Education passed a resolution declaring it necessary to replace the 1972 and 1979 levies with a levy in the same 11.4-mill amount. On

August 10, 2009, the school board passed a resolution declaring its intent to submit the question of the replacement tax levy to the district electors at the November 3, 2009 election. The ballot form for the election certified to the board of elections followed the form for an R.C. 5705.192 same-rate replacement levy:

> *Section 3.* The form of the ballot to be used at said election shall be substantially as follows:
>
> A replacement of * * * two existing levies to constitute a tax for the benefit of the Westerville City School District, Franklin and Delaware Counties, Ohio for the purpose of paying current operating expenses at a rate not exceeding eleven and four-tenths (11.40) mills for each dollar of valuation, which amounts to one dollar and fourteen cents ($1.14) for each one hundred dollars of valuation, for a continuing period of time, commencing in 2009, first due in calendar year 2010.

*See* R.C. 5705.192(C).

{¶ 4} On November 3, 2009, district voters approved the 11.4-mill, same-rate replacement levy. No timely challenge to the validity of the November 3, 2009 vote was raised.

{¶ 5} Relator Taxpayers for Westerville Schools is a nonprofit, ballot-issue, and political-action committee that is organized to advance a petition proposing a decrease of the November 2009 voter-approved levy. The remaining relators—James Burgess, Mary Medors, and Roderick Clay—are school-district residents and electors who comprise the committee representing the petitioners.

{¶ 6} On August 7, 2012, relators submitted an initiative petition, which contained 5,136 signatures, to respondent Franklin County Board of Elections. The petition proposed the following question, titled "**PETITION FOR**

**ELECTION ON THE DECREASE OF AN INCREASED RATE OF LEVY APPROVED FOR A CONTINUING PERIOD OF TIME**," for submission to the district electors at the November 6, 2012 general-election ballot:

We, the undersigned electors of the Westerville City School District, Ohio, respectfully petition for an election on the question of decreasing the increased rate of the levy which was approved at the election held on the 3rd day of November, 2009, for the benefit of the Westerville City School District for the purpose of current operating expenses at a rate not exceeding 11.4 mills for each dollar of valuation, which amounts to $1.14 for each one hundred dollars of valuation, for a continuing period of time, commencing in 2009, first due in calendar year 2010, **such decrease to be from the voted millage of 11.4 mills to 4.69 mills, being a reduction of 6.71 mills.**

(Boldface sic.)

{¶ 7} On August 20, 2012, the board of elections certified relators' levy-decrease question to the November 6, 2012 general-election ballot. Relators needed approximately 3,600 valid signatures to qualify for the ballot, and the Franklin and Delaware County Boards of Elections found that the petition contained over 4,600 valid signatures. The levy-decrease question was designated as Issue 52 on the November 6 ballot.

{¶ 8} On August 20 and 22, Westerville resident Eugene Hollins submitted a protest against relators' petition. Hollins claimed that relators' petition did not properly propose a levy-decrease question because the November 2009 voter-approved levy did not result in an increased rate of levy for school-

district property owners. Instead, the 2009 levy simply replaced the previous voter-approved levies at the same rate of 11.4 mills.

{¶ 9} On September 4, 2012, the board of elections held a hearing on Hollins's protest at which relators and Hollins presented argument. After hearing the arguments, the board of elections accepted Hollins's protest and removed relators' levy-decrease question from the November 6 general-election ballot.

{¶ 10} Two days later, relators filed this expedited election case for a writ of mandamus to compel the Franklin County Board of Elections to certify and place on the November 6 ballot relators' purported R.C. 5705.261 (levy decrease) question to reduce by 6.71 mills the increased rate of levy imposed by the November 2009 voter-approved levy. The school district and Hollins intervened as additional respondents, and the parties submitted their briefs and evidence with the accelerated schedule for expedited election cases in S.Ct.Prac.R. 10.9. Amicus curiae briefs were filed by Coalition Opposed to Additional Spending and Taxation on behalf of relators and by Ohio School Boards Association, Ohio Association of School Business Officials, and Buckeye Association of School Administrators on behalf of respondents.

{¶ 11} This cause is now before the court for our decision on the merits.

**Analysis**

*Mandamus*

{¶ 12} Relators request a writ of mandamus to compel the board of elections to place their levy-decrease question on the November 6 election ballot. To be entitled to the requested writ of mandamus, relators must establish a clear legal right to the requested relief, a clear legal duty on the part of the board of elections to provide it, and the lack of an adequate remedy in the ordinary course of law. *State ex rel. Waters v. Spaeth*, 131 Ohio St.3d 55, 2012-Ohio-69, 960 N.E.2d 452, ¶ 6. Because of the proximity of the November 6 election, relators have established that they lack an adequate remedy in the ordinary course of the

4

law. *State ex rel. Owens v. Brunner*, 125 Ohio St.3d 130, 2010-Ohio-1374, 926 N.E.2d 617, ¶ 25.

{¶ 13} For the remaining requirements, relators claim that the board of elections abused its discretion and clearly disregarded R.C. 5705.261 (referendum on levy decrease) by sustaining Hollins's protest and removing the levy-decrease question from the ballot. *See, e.g., State ex rel. Coble v. Lucas Cty. Bd. of Elections*, 130 Ohio St.3d 132, 2011-Ohio-4550, 956 N.E.2d 282, ¶ 11.

*R.C. 5705.261 and 5705.192*

{¶ 14} R.C. 5705.261 governs the procedure for submitting a question of a decrease of a voter-approved levy for a continuing period of time to the electorate:

> The question of decrease of an increased rate of levy approved for a continuing period of time by the voters of a subdivision or, in the case of a qualifying library levy, the voters of the library district or association library district, may be initiated by the filing of a petition with the board of elections of the proper county not less than ninety days before the general election in any year requesting that an election be held on such question. Such petition shall state the amount of the proposed decrease in the rate of levy and shall be signed by qualified electors residing in the subdivision, library district, or association library district equal in number to at least ten per cent of the total number of votes cast in the subdivision, library district, or association library district for the office of governor at the most recent general election for that office. Only one such petition may be filed during each five-year period following the election at which the voters approved the increased rate for a continuing period of time.

After determination by it that such petition is valid, the board of elections shall submit the question to the electors of the subdivision, library district, or association library district at the succeeding general election.

{¶ 15} In *State ex rel. Choices for South-Western City Schools v. Anthony*, 108 Ohio St.3d 1, 2005-Ohio-5362, 840 N.E.2d 582, at ¶ 37, the court set forth the requirements under R.C. 5705.261 for the placement of a levy-decrease question on an election ballot:

R.C. 5705.261 therefore specifies the following requirements for petitioners requesting the submission of the levy-decrease issue to voters: (1) their petition must propose the "question of decrease of an increased rate of levy approved for a continuing period of time by voters of a subdivision," (2) their petition must be filed with the county board of elections no fewer than 75 days before the general election in any year requesting that an election be held on the question, (3) their petition must state the amount of the proposed decrease in the rate of levy, (4) their petition must be signed by qualified electors numbering at least ten percent of the total number of votes cast in the subdivision for governor at the most recent general election for that office, and (5) only one petition may be filed during each five-year period after the election at which voters approved the increased rate for a continuing period.

{¶ 16} The board of elections determined that based on Hollins's protest and the school board's argument in support of the protest, relators' petition did

not properly propose the "question of decrease of an increased rate of levy approved for a continuing period of time by voters of a subdivision." The dispositive issue in assessing the propriety of the elections board's determination is whether the voter-approved 11.4-mill levy in November 2009 constituted an "increased rate of levy" from the then existing levies in the school district.

{¶ 17} The paramount concern in statutory interpretation is the legislative intent in enacting the statute. *Choices for South-Western City Schools*, 108 Ohio St.3d 1, 2005-Ohio-5362, 840 N.E.2d 582, ¶ 40. "To discern this intent, we first consider the statutory language, reading words and phrases in context and construing them in accordance with rules of grammar and common usage." *Id.* In addition, words that have acquired a particular meaning shall be construed accordingly. *See* R.C. 1.42; *State ex rel. Barley v. Ohio Dept. of Job & Family Servs.*, 132 Ohio St.3d 505, 2012-Ohio-3329, 974 N.E.2d 1183, ¶ 21. And finally, R.C. 5705.261 must be construed in pari materia with statutes that relate to the same subject matter so as to give full effect to all the related statutes. *Choices for South-Western Schools* at ¶ 46.

{¶ 18} Construing R.C. 5705.261 according to these rules, we conclude that the phrase "rate of levy" in this context refers to the amount of millage approved by the voters regardless of whether the effective or actual amount of taxes collected or paid has been reduced by other provisions. *See Black's Law Dictionary* 991 and 1375 (9th Ed.2009), defining "levy" as "[t]he imposition of a fine or tax" and "rate" as "the proportion by which quantity or value is adjusted."

{¶ 19} Under R.C. 5705.192(B) (replacement levies), the school district "may propose to replace the existing levy in its entirety at the rate at which it is authorized to be levied; may propose to replace a portion of the existing levy at a lesser rate; or may propose to replace the existing levy in its entirety and increase

the rate at which it is levied."[1] The Westerville City School District chose the first of these options and included the ballot language required by R.C. 5705.192(C) to specify to district electors voting in the November 3, 2009 election that they were voting on an 11.4-mill same-rate replacement levy. The replacement of the 1972 and 1979 levies in the combined rate of 11.4 mills with one of the same 11.4-mill rate was permitted by R.C. 5705.192(D), which provides, "Two existing levies * * * may be combined into one replacement levy, so long as both of the existing levies are for the same purpose and either both are due to expire in the same year or both are for a continuing period of time."

{¶ 20} Relators argue that the November 3, 2009 11.4-mill levy increased the actual or effective taxes collected and paid by district property owners because R.C. 319.301 reduced the effective millage of the 1972 and 1979 voter-approved levies. Because of R.C. 319.301, as amended by the General Assembly in Am.Sub.H.B. No. 920 ("H.B. 920"), 136 Ohio Laws, Part II, 3182, 3194-3196, in 1976, the effective amount of the taxes actually assessed from the 2009 levy was 3.43 mills.

{¶ 21} R.C. 319.301 reduces the amount of taxes actually paid when property values rise:

The purpose of R.C. 319.301, as amended, is to limit growth of real property tax revenues that would otherwise occur as a consequence of inflation of property values. R.C. 319.301 requires the application of tax reduction factors when property values

---

1. "[A]n electorate does not ordinarily levy a tax; instead, the electorate authorizes a legislative body to levy the tax." *See Lima v. Allen Cty. Budget Comm.*, 66 Ohio St.3d 167, 172, 610 N.E.2d 982 (1993), citing *New Boston v. Scioto Cty. Budget Comm.*, 20 Ohio St.2d 151, 254 N.E.2d 342 (1969). The existing 1972 and 1979 levies authorized the school district to levy property taxes at an aggregate rate of 11.4 mills.

increase due to reappraisal or update. The result is that a school district will receive the same number of dollars from voted tax levies after reappraisal as it did before reappraisal, even though real property valuation in the district has increased through real estate inflation. As a direct result of these tax reduction measures introduced by H.B. No. 920, local revenues cannot keep pace with inflation, and school districts have been required to propose additional tax levies—most of which ultimately fail.

(Footnote omitted.) *DeRolph v. State*, 78 Ohio St.3d 193, 200-201, 677 N.E.2d 733 (1997); *see also* Hastings, Manoloff, Sharb, Sheeran & Jaffe, *Baldwin's Ohio School Law*, Section 40.23 (2011) ("certain tax levies—including those voted for a continuing period of time—are subject to reduction by a statutory procedure designed to produce the same number of dollars each year from the same properties. This is the so-called 'House Bill 920' procedure" [footnotes omitted]).

{¶ 22} The tax-reduction factors in R.C. 319.301, however, did not reduce the rate of the voter-approved levies. R.C. 319.301(F) expressly provides, "No reduction shall be made under this section in the *rate* at which any tax is *levied*." (Emphasis added.) Therefore, although R.C. 319.301 reduced the effective or actual taxes charged and collected from the 11.4-mill aggregate of the 1972 and 1979 levies when district voters approved the 11.4-mill replacement levy in 2009, the statute did not reduce the 11.4-mill combined "rate of levy" when voters approved a levy at the same 11.4-mill rate in 2009. Relators' citation of inapplicable statutes in rebuttal, *see* R.C. 5748.03(D) and 5748.04(B)(3), which address ballot language concerning the effect of a repeal on the imposition of an income tax, does not alter this conclusion.

{¶ 23} In effect, relators' contentions seek judicial amendment of the pertinent statutory provisions to substitute the phrases "effective taxes," "effective

millage," or "actual taxes" for "rate of levy" in R.C. 5705.261. But because the language used in R.C. 5705.261 and 5705.192 is unambiguous in this context, we can neither add language to these statutes nor delete language from them. *Coble*, 130 Ohio St.3d 132, 2011-Ohio-4550, 956 N.E.2d 282, ¶ 27. And insofar as relators challenge the propriety of designating the November 3, 2009 levy as a same-rate replacement levy under R.C. 5705.261 because it is "deceptive," they did not timely challenge that designation or election result.

{¶ 24} Similarly, although we are "inclined to construe R.C. 5705.261 broadly" to allow the election sought by relators when there is no "definitive expression of legislative intent," *State ex rel. Citizens for Responsible Taxation v. Scioto Cty. Bd. of Elections*, 67 Ohio St.3d 134, 139, 616 N.E.2d 869 (1993), that is not the case here, where the applicable provisions, including R.C. 5705.261 and 5705.192, manifestly indicate that legislative intent permits a levy-decrease election in this context only when voters have approved an increase in the prior voter-approved rate of levy.

{¶ 25} Finally, "R.C. 5705.261 is a general provision that specifies the procedure affecting several different types of levies authorized in other Revised Code provisions." *Choices for South-Western City Schools*, 108 Ohio St.3d 1, 2005-Ohio-5362, 840 N.E.2d 582, ¶ 46. Although statutes authorizing other types of school-district levies explicitly note that the amount of taxes may be reduced pursuant to the levy-decrease provision of R.C. 5705.261, *see* R.C. 5705.21(B) (special levy), 5705.212(A)(3) (special elections), 5705.199(F) (substitute excess levy), 5705.217(A) (levy in excess of ten-mill limitation for current operating expenses and permanent improvements), 5705.218(J)(6) (levy in excess of ten-mill limitation for current expenses of school district), and 5705.219(F) (conversion of existing levies), the statute authorizing replacement levies that is at issue here, R.C. 5705.192, does not.

**{¶ 26}** Therefore, based on the plain language of R.C. 5705.261 and 5705.192, relators' initiative petition does not properly propose the "question of decrease of an increased rate of levy approved for a continuing period of time by the voters of a subdivision." R.C. 5705.261. The 2009 voter-approved levy was at the same 11.4-mill rate of levy of the combined voter-approved levies that it replaced. The tax-reduction factors did not reduce the rate of these levies in the context of the applicable statutory provisions. R.C. 319.301(F).

### Conclusion

**{¶ 27}** Based on the foregoing, the board of elections neither abused its discretion nor clearly disregarded R.C. 5705.261 and 5705.192 by sustaining Hollins's protest and removing relators' levy-decrease initiative from the November 6 ballot. Therefore, relators have not established their clear legal right to the requested extraordinary relief in mandamus or a clear legal duty on the part of the board of elections to provide it. We thus deny the requested writ of mandamus to compel the board of elections to certify and place the question on the November 6 election ballot.

Writ denied.

O'CONNOR, C.J., and PFEIFER, LUNDBERG STRATTON, O'DONNELL, LANZINGER, CUPP, and MCGEE BROWN, JJ., concur.

_____

1851 Center for Constitutional Law and Maurice A. Thompson, for relators.

Ronald J. O'Brien, Franklin County Prosecuting Attorney, and Nick A. Soulas Jr. and Harold J. Anderson III, Assistant Prosecuting Attorneys, for respondent Franklin County Board of Elections.

Wiles, Boyle, Burkholder & Bringardner Co., L.P.A., Michael L. Close, and Dale D. Cook, for respondent Eugene Hollins.

Bricker & Eckler, L.L.P., Anne Marie Sferra, Maria J. Armstrong, and Jennifer A. Flint, for respondent Westerville City School District Board of Education.

James C. Becker, urging granting of the writ for amicus curiae Coalition Opposed to Additional Spending and Taxation.

Ulmer & Berne, L.L.P., and Donald J. Mooney Jr., urging denial of the writ for amici curiae Ohio School Boards Association, Ohio Association of School Business Officials, and Buckeye Association of School Administrators.

_____