**In re ISSUE 27 ELECTION OF NOVEMBER 4, 1997.**

Court of Common Pleas of Ohio,
Licking County.

No. 97 CV 769.

Decided Jan. 6, 1998.

*Donald C. Brey,* for contestors.

*Christopher R. Meyer* and *William Douglas Lowe,* for contestees.

*David Q. Wiggington,* Assistant Prosecuting Attorney, for Licking County Board of Elections.

JON R. SPAHR, Judge.

## I. NATURE OF THE PROCEEDINGS

This matter came before the court on a trial to the bench held January 2, 1998. After careful consideration, this court issues the following findings of fact and conclusions of law:

## II. FACTS

Issue 27, a proposed levy to benefit the Newark City School District, was on the ballot at the November 4, 1997 general election. Issue 27 sought to impose a one-percent income tax over the next five years on individuals within the Newark City School District. The results of the November 4 election were certified on November 19, and indicated that Issue 27 failed by four votes, the totals being 7,350 votes against the levy, and 7,346 votes for the levy. Because the four-vote margin was less than one half of one percent of the total votes, an automatic recount on Issue 27 was scheduled for November 26, 1997.

Notice of the recount was placed in the Newark Advocate, and was sent to the treasurer of the Newark City School District. Thereafter, proponents of the levy filed a written petition to allow two representatives, Richard Evans and Jennifer Brunner, to witness the recount. No opponents of the levy were specifically notified of the recount and no opponents of the levy sought to witness the recount. Since no election in Licking County has ever had witnesses present during a recount, the Board of Elections held a special meeting to determine the appropriate procedure that would allow the representatives to witness the recount, and visually inspect each ballot, without interfering or jeopardizing the integrity of the process.

At the recount on November 26, 1997, two staff members of the Board of Elections, Diane Saunders and Sue Penick, held the ballots up for Richard Evans and Jennifer Brunner, who in turn visually inspected Box 188 on each ballot. Evans and Brunner did not visually inspect all the "yes" ballots, as some precincts were not inspected by them. Box 188 is the box indicating a "yes" vote for Issue 27. Issue 27 was not rotated on the ballots, making Box 188 a "yes" vote on each ballot. Neither Evans nor Brunner stated that he or she had visually inspected any of the ballots for "no" votes. Further, neither Saunders nor Penick visually inspected any of the ballots. Rather, they passively held up each ballot, one precinct at a time, without any "inspection" of either the "yes" or the "no" votes. Thus, challenges were made solely upon the visual inspection by either Evans or Brunner, except one "no" vote brought to the attention of Evans and Brunner.

Challenges by Evans and Brunner were made based upon the "hanging chad" rule. "Chad" refers to pieces of paper which are punched out of a paper ballot, thereby reflecting a voter's intent. "Hanging chad" refers to pieces of paper

which may have been intentionally punched by a voter, or which may be loose from handling or processing, but in either instance are still attached to the ballot at the corners. The "hanging chad" rule requires removal of the paper if it is attached by two or less corners, thus counting as a vote. Evans and Brunner visually inspected virtually all "yes" boxes to search for hanging chad that had not been removed and could have caused an incorrect reading by the machine which counts the ballots.

When Evans or Brunner identified a ballot which potentially had been read incorrectly because of hanging chad, they challenged the ballot. Challenges were reviewed by the director and deputy director of the Board of Elections. In situations where the director and deputy director disagreed, a panel of four board members made a decision. In the end, the board approved eighteen out of thirty challenges. The chad was removed from the eighteen approved challenges. Chad was also removed from the single "no" vote found in the process. Once the visual inspection was complete, the ballots were tabulated mechanically and resulted in 7,364 "yes" votes, and 7,351 "no" votes, thus passing Issue 27 by thirteen votes. This suit followed.

## III. STANDARD OF REVIEW

■ The law in Ohio makes "[a]n election contest * * * the specific remedy * * * for the correction of all errors, mistakes and frauds which may occur in the process of determining and declaring the true expression of the public will as expressed at the voting booth, including a vote recount." Copeland v. Tracy (1996), 111 Ohio App.3d 648, 654, 676 N.E.2d 1214, 1218, citing State ex rel. Byrd v. Summit Cty. Bd. of Elections (1981), 65 Ohio St.2d 40, 19 O.O.3d 230, 417 N.E.2d 1375. In an election contest, the burden of proof is on the contestor, who must show by clear and convincing evidence that "one or more election irregularities occurred, and * * * that the irregularity or irregularities affected enough votes to change or make uncertain the result of the election." In re Contested Election of November 2, 1993 (1995), 72 Ohio St.3d 411, 413, 650 N.E.2d 859, 861–862; and Copeland, supra, citing In re Election of November 6, 1990 for the Office of Atty. Gen. of Ohio (1991), 58 Ohio St.3d 103, 569 N.E.2d 447. With this standard, the court will now address the present case.

## IV. CONCLUSIONS OF LAW

R.C. 3515.13 allows a court to order a recount in an election contest. In particular, R.C. 3515.13 states:

"If any contest of election involves a recount of the ballots in any precincts, the court shall immediately order the ballots of the precincts in which the recount is demanded to be sent to the court in such manner as the court designates, and such court may appoint two master commissioners of opposite political parties to supervise the making of the recount. The attorneys representing the contestor and the prosecuting attorney of the county or the attorney general or one of his

assistants representing the contestee shall be present at all hearings on such recount. * * * Both the contestor and contestee may appoint one inspector who shall be allowed to see all ballots and tally sheets and witness the recount."

█ In this· case, the court finds by clear and convincing evidence that a subsequent recount is appropriate because the November 26 automatic recount was conducted with irregularities, and the irregularities affected enough votes to make uncertain or change the results of the election.

First, the November recount failed to comply with the Ohio Secretary of State's Election Recount Requirements and Procedures. Therein, under the subpart entitled "Inspect the Ballot Cards," it clearly states:

"a) Ballot cards should be inspected for hanging chad, mutilations, and other invalidities.

" * * *

"c) Witnesses may observe each card as it is inspected."

The above language indicates that an inspection of the ballots should occur at a recount by the Board of Elections' staff. Indeed, when subparts (a) and (c) are construed together, one must conclude that witnesses to a recount may merely observe a card being inspected by a board staff member, but in no way may a witness actually conduct the inspection. In the instant case, the witnesses, Evans and Brunner, actually inspected the ballots as each ballot was held up by the board staff members. According to the testimony of the director of the Board of Elections, the staff members did nothing more than hold each ballot for the witnesses to inspect, but did not personally inspect the ballots for "hanging chad" on either "yes" or "no" votes. This procedure is contrary to the Secretary of State's guidelines, and constitutes an irregularity.

Second, according to the expert testimony of John Bender, although an elections board has no statutory obligation to visually inspect every ballot for "hanging chad" on "yes" and "no" votes at a recount, an obligation may be created if something is uncovered that gives the board reason to suspect some inaccuracy in the count. In this case, the board had reason to formulate such suspicion, to wit, the individual inspection of only the "yes" votes by Evans and Brunner uncovered problematic ballots that could have caused an incorrect reading by the machine that counts the ballots. When the challenges were raised, it gave the board reason to suspect an irregularity that affected enough votes to make uncertain or to change the result of the election. The Board of Elections then had a duty to take all necessary steps to ensure a fair and accurate count. In this trial, it was established by clear and convincing evidence that "hanging chad" is a problem, and that unless all ballots are closely inspected on the automatic recount by an impartial body, such as the Board of Elections, a

full and fair count of all votes cannot be attained. Thus, by not going back and visually inspecting all the ballots for "hanging chad" on all "yes" and "no" votes, the board failed to ensure a fair and accurate count of the votes cast for and against Issue 27.

It is important to note that neither the proponents nor the Board of Elections acted with any impropriety. From the beginning there have been, without question, no allegations of fraud or illegality by or concerning any party. In effect, the Board of Elections found itself treading in uncharted waters, without knowledge of its depth and possible perils. In such a circumstance, the board strove to implement an open and fair procedure by allowing witnesses to view the recount. The process was chosen by the board without knowledge of the possible perils, and unfortunately the result was tainted. The process was an option that attempted to secure a fair result, and nothing more.

Still, in the end one is faced with the inescapable conclusion that the process to count the ballots used in the November recount was flawed. A recount pursuant to R.C. 3515.13 is the only fair and equitable procedure to ensure the correct tally of all the votes. As was originally held by the Ohio Supreme Court, and later reiterated in *Copeland, supra*, "the message of the established law in Ohio is clear: our citizens must be confident that their votes, cast either for a candidate or issue, will not be disturbed except under extreme circumstances that clearly affect the integrity of the election." *Copeland*, 111 Ohio App.3d at 655, 676 N.E.2d at 1218, citing *In re Election of November 6, 1990, supra.*

Finally, in this country we are fortunate that every individual is entitled to his or her vote, whether present in a voting booth on election day, or voting absentee. Also, we are fortunate that boards of elections such as the Licking County Board of Elections strive to provide such open and honest procedures. Because of these procedures, every citizen can be secure in knowing that his or her individual vote is counted. One role of the courts, specifically of this court in this case, is to protect the integrity and importance of each vote and the process that allows our citizens to be heard. It is for this reason that a recount is the only answer.

## V. CONCLUSION

The court having found the existence of irregularities by clear and convincing evidence, the contestors' request for a recount is granted. Counsel for the contestors shall prepare a judgment entry accordingly, present it to opposing counsel for approval, and submit it to the court within five days.

*So ordered.*