[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Delaware Join Vocational School Dist. Bd. of Edn. v. Testa,* Slip Opinion No. 2017-Ohio-796.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2017-OHIO-796

THE STATE EX REL. DELAWARE JOINT VOCATIONAL SCHOOL DISTRICT BOARD OF EDUCATION *v.* TESTA, TAX COMMR.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Delaware Join Vocational School Dist. Bd. of Edn. v. Testa,* Slip Opinion No. 2017-Ohio-796.]

*Mandamus—Renewal tax levy for multicounty joint vocational school district did not appear on ballots of district electors who did not reside in most populous county in the district—Writ sought to compel state tax commissioner to apply reduction factors and calculate tax rates under R.C. 319.301(D) for levy that passed after appearing on ballots only in most populous county in the district—Certification of election results by boards of elections—Tax commissioner does not have clear legal duty to apply reduction factors and calculate tax rates when there is no documentation that tax was "authorized to be levied" under R.C. 319.301(D)—Writ denied.*

(No. 2017-0079—Submitted February 9, 2017—Decided March 8, 2017.)

IN MANDAMUS.

_____

**Per Curiam.**

{¶ 1} The Delaware Joint Vocational School District Board of Education seeks a writ of mandamus to compel Ohio Tax Commissioner Joseph Testa to apply reduction factors and calculate the tax rates on a levy that the school district sought to renew in 2015. To obtain a writ of mandamus, the board of education must establish a clear legal right to the relief requested and a clear legal duty on the part of the tax commissioner to act, and it must demonstrate that no adequate remedy at law exists. Ohio law requires the tax commissioner to apply reduction factors and calculate tax rates with respect to each tax "authorized to be levied by each taxing district." R.C. 319.301(D). In this case, because no proper certification of the multicounty election has been presented to the tax commissioner demonstrating that the tax is "authorized to be levied," the tax commissioner does not have a clear legal duty to apply reduction factors and calculate tax rates for this levy. Accordingly, we deny the requested writ of mandamus.

**Facts and Procedural History**

{¶ 2} The facts in this case are not in dispute. The Delaware Joint Vocational School District provides career and technical education for students who live in Delaware County and portions of Franklin, Marion, Morrow, and Union Counties. Because the ten-year, 1.7-mill levy funding the school district was set to expire on December 31, 2016, the school board passed a resolution in July 2015 to submit a renewal levy to voters at the November 2015 general election.

{¶ 3} In accord with Article XII, Section 2 of the Ohio Constitution, the General Assembly enacted R.C. 3311.21(A), which permits the board of education of a joint vocational or cooperative education school district to submit a tax levy in excess of the ten-mill limitation to the voters of that district. After the school board certifies its resolution to "the board of elections of the county containing the most populous portion of the district," the board of elections

2

shall * * * send [the resolution] to the boards of elections of each county in which territory of the district is located, * * * and the board of elections of each county in which the territory of such district is located shall make the other necessary arrangements for the submission of the question to the electors of the joint vocational or cooperative education school district.

*Id.*

{¶ 4} Pursuant to that requirement, the school board certified its renewal levy to the board of elections in Delaware County. However, the Delaware County Board of Elections did not send the resolution to the boards of elections in Franklin, Marion, Morrow, and Union Counties. And, on the reporting form that it filed with the secretary of state on August 25, 2015, the Delaware County Board of Elections erroneously indicated that there were no "overlapping counties" involved in the election, and it therefore failed to name the other counties that should have been listed. As a result, at the November 2015 general election, the renewal levy did not appear on the ballots of electors residing within the district in Franklin, Marion, Morrow, and Union Counties.

{¶ 5} R.C. 3501.05(G) provides that "[t]he secretary of state shall * * * [d]etermine and prescribe the forms of ballots and the forms of all * * * *certificates of election*, and forms and blanks required by law for use by * * * boards," and R.C. 3501.11(M) states that each board of elections shall "[i]ssue certificates of election *on forms to be prescribed by the secretary of state*." (Emphasis added.)

{¶ 6} Pursuant to these statutes, the secretary of state prescribed Form 5-U, "Certification of Official Results by Most Populous County for Local Questions and Issues," for county boards of elections to use in certifying the results of multicounty elections, and the current version of that form has been in use since

July 2013. The secretary of state's *Ohio Ballot Questions and Issues Handbook* issued in May 2015 provides, "After the most populous county has received the official certification of results from each of the less populous counties, the populous county must provide an official certification to the Secretary of State's office that clearly lists the final vote totals *of each county in the district* or jurisdiction." (Emphasis added.) A footnote in this directive refers to Form 5-U as the official certification prescribed by the secretary of state. For all tax levies, the board of elections of the most populous county must certify the election results to the tax commissioner, the fiscal officer of the subdivision where the election was held, and the county auditor of each affected county. *See* R.C. 5705.25(D); 5748.08(F); 5705.211(D); 5705.218(E); 3318.07; *see also* R.C. 133.18(G).

{¶ 7} On November 20, 2015, the Delaware County Board of Elections purported to certify the election result using Form 125, which reported only the result of the levy vote in Delaware County, instead of using Form 5-U, which the secretary of state had prescribed for certifying the election results in a multicounty election.

{¶ 8} Also relevant here is R.C. 319.301(D)(1), which directs that for each tax "authorized to be levied," the tax commissioner shall apply tax reduction factors in order to limit increases of tax revenues that would otherwise occur due to the inflation of property values over the life of the levy. *See generally State ex rel. Taxpayers for Westerville Schools v. Franklin Cty. Bd. of Elections*, 133 Ohio St.3d 153, 2012-Ohio-4267, 976 N.E.2d 890, ¶ 21. R.C. 319.301(D)(2) further directs the tax commissioner to certify the percentage that the tax would have to be reduced on the property to be taxed to the county auditor in each county in which territory of the district is located, who then shall reduce the sum to be levied on the property subject to it. And R.C. 319.301(G) specifies that in calculating this reduction, the tax commissioner "may order a county auditor to furnish any information the commissioner needs to make the determinations required under division (D) or (E)

of this section, and the auditor shall supply the information in the form and by the date specified in the order."

{¶ 9} In February 2016, the school board approved an alternative tax budget for 2017 that included funds raised by the levy and submitted it to the Delaware County Budget Commission and the Delaware County Auditor. The county auditor then delivered the abstract of tax rates to the tax commissioner in December 2016 to apply the reduction factors and calculate the tax rate for the school district.

{¶ 10} In 2016, the tax commissioner had directed county auditors to submit Form 5-U with the abstract when a levy had been proposed to voters in multiple counties. On December 8, 2016, the Delaware County Auditor discovered, however, that his office did not have a copy of Form 5-U, and it became evident that the Delaware County Board of Elections had not certified the results of the levy using that form. Although the auditor submitted the certificate of election that the Delaware County Board of Elections had issued, the tax commissioner excluded the levy on the list of tax rates certified for collection to the county auditors in the five counties with territory in the school district because the Delaware County Auditor had not submitted the result of the multicounty school district election using Form 5-U. As a result, the levy was not included on the property-tax bills sent to property owners in the school district for the first half of tax year 2016 (payable in 2017).

{¶ 11} The school board brought this mandamus action to compel the tax commissioner to apply the reduction factors and calculate the tax rates for the levy. It maintains that the tax commissioner has no authority to question the validity of an election that has been certified by the board of elections and that the certificate of election issued by the Delaware County Board of Elections is "conclusive" of the levy's passage unless it is set aside or vacated in a manner authorized by law. And, it argues, because the tax commissioner has a mandatory ministerial duty to

apply reduction factors and calculate tax rates, it has a clear legal right to the performance of that duty.

**Law and Analysis**

*Mandamus*

{¶ 12} To be entitled to a writ of mandamus, a relator must establish, by clear and convincing evidence, (1) a clear legal right to the requested relief, (2) a clear legal duty on the part of the respondent to provide it, and (3) the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Waters v. Spaeth*, 131 Ohio St.3d 55, 2012-Ohio-69, 960 N.E.2d 452, ¶ 6, 13.

{¶ 13} Even when the duty is ministerial, Ohio law may confer discretion on the official in deciding the manner of performing that duty. *Zupancic v. Wilkins*, 10th Dist. Franklin No. 08AP-472, 2009-Ohio-3688, ¶ 24, citing *Ashland Cty. Bd. of Commrs. v. Ohio Dept. of Taxation*, 63 Ohio St.3d 648, 656, 590 N.E.2d 730 (1992). The exercise of discretion conferred by statue cannot be controlled by mandamus "unless an abuse thereof is clearly shown." *State ex rel. Foster v. Miller*, 136 Ohio St. 295, 304, 25 N.E.2d 686 (1940).

*Certifying the Election Results*

{¶ 14} Here, the use of Form 5-U to certify the election results as prescribed by the secretary of state would have revealed that the levy was invalid because it had not been submitted to voters in Franklin, Marion, Morrow, and Union Counties as required by law. But the Delaware County Board of Elections did not use Form 5-U to certify the election results to the tax commissioner, and he did not have the information to conclude that the tax had been authorized to be levied. Because the levy was never submitted to the electors in Franklin, Marion, Morrow, and Union Counties and because the results of the election were never properly certified to the tax commissioner, he could not determine that the tax had been authorized to be levied as required by R.C. 319.301(D) and therefore had no clear legal duty to apply the reduction factors and calculate the tax rates for this levy.

6

State ex rel. Daoust v. Smith

{¶ 15} *State ex rel. Daoust v. Smith*, 52 Ohio St.2d 199, 371 N.E.2d 536 (1977), which the school board relies upon, is distinguishable on its facts. There, the clerk-treasurer of the Toledo public schools had refused to sign tax anticipation notes following the passage of a levy based upon irregularities in "the notice of election and the form of the ballot." *Id*. at 200. We issued a writ of mandamus to compel the clerk-treasurer to sign the notes, reasoning that an election contest brought pursuant to R.C. 3515.08, et seq., was the proper manner to challenge the election results. Because there was no evidence that an election contest had been filed within 15 days "after the results of [the] * * * election [had] been ascertained and announced by the proper authority," R.C. 3515.09, the board of elections' certification of the election results was conclusive. *Id*. at 201.

{¶ 16} In contrast, here, the Delaware County Board of Elections has not certified the results of the election in each of the counties of the multicounty school district, and there has not been a valid election result "ascertained and announced by the proper authority" pursuant to R.C. 3515.09. Absent certification of the multicounty election, the tax commissioner has no legal documentation demonstrating that the tax has been "authorized to be levied" under R.C. 319.301(D). Thus, the tax commissioner has no clear legal duty to apply the reduction factors and calculate the tax rates for the levy.

### Conclusion

{¶ 17} Upon receipt of a resolution from the Delaware Joint Vocational School District Board of Education for renewal of its levy, the Delaware County Board of Elections failed to send the resolution to the boards of elections in Franklin, Marion, Morrow, and Union Counties, which are part of the joint vocational school district, and the levy was never voted on in those counties, but it did appear on the ballot and passed in Delaware County. In addition, the Delaware County Board of Elections did not certify the election results using the form

prescribed by the secretary of state and failed to list the final vote totals of each county in the school district.

{¶ 18} The statutory obligation of the tax commissioner to apply the reduction factors and calculate the tax rates in multicounty districts arises for a tax that has been "authorized to be levied." Here, because the election results have not been properly certified to the tax commissioner, he could not determine that the tax had been authorized to be levied; thus, he has no clear legal duty to apply the reduction factors and calculate the tax rates for this levy.

{¶ 19} Accordingly, the school district has no clear legal right to relief and the tax commissioner has no clear legal duty to act, and the requested writ of mandamus is denied.

Writ denied.

O'DONNELL, KENNEDY, O'NEILL, and DEWINE, JJ., concur.

O'CONNOR, C.J., dissents, with an opinion joined by FRENCH and FISCHER, JJ.

_____

**O'CONNOR, C.J., dissenting.**

{¶ 20} I disagree with the legal premises on which the majority opinion is based. A county board of elections and a county auditor are *not* required to submit a copy of Ohio Secretary of State Form 5-U to the Ohio Tax Commissioner. Ohio Secretary of State Form 125 is a designated form for reporting the results of tax levies to the tax commissioner. Having received an executed Form 125 for the levy at issue, the tax commissioner, respondent Joseph Testa, had no statutory authority to demand a Form 5-U or otherwise conduct an investigation into election proceedings. Rather, pursuant to R.C. 319.301(D), the tax commissioner has a clear legal duty to conduct the ministerial functions of his office, and because he has refused to do so, a writ of mandamus should issue. I therefore respectfully dissent.

8

{¶ 21} In July 2015, relator, the Delaware Joint Vocational School District Board of Education, approved a resolution to proceed with a renewal of its ten-year, 1.7-mill operating levy. Pursuant to R.C. 3311.21(A), the school board certified its renewal levy to the board of elections in Delaware County, the county in which approximately 98.4 percent of the tax parcels in the Delaware Joint Vocational School District are located. Through no fault of the school board, the Delaware County Board of Elections neglected to give notice of the resolution to the boards of elections in Franklin, Marion, Morrow, and Union Counties, the other four counties with territory in the district, as it was required to do by R.C. 3311.21(A).

{¶ 22} On November 20, 2015, the Delaware County Board of Elections certified the passage of the renewal levy, by a vote of 28,457 to 17,813. The four excluded counties contained only about 1,026 registered voters in the district. So the omission of those ballots did not affect the outcome: even if every excluded voter had cast a ballot and voted against the levy, it would have still passed by about 9,618 votes.

{¶ 23} R.C. 319.301(D) imposes a mandatory duty upon the tax commissioner to perform two ministerial operations. The statute states: "With respect to each tax authorized to be levied by each taxing district, the tax commissioner, annually, *shall* do both of the following * * *." (Emphasis added.) The statute then requires the tax commissioner to calculate the tax-reduction percentages, R.C. 319.301(D)(1), and certify the percentages to the appropriate county auditors, R.C. 319.301(D)(2). Tax Commissioner Testa has refused to calculate the reductions because, in his judgment, the failure to place the measure on the relevant ballots in Franklin, Marion, Morrow, and Union Counties renders the levy invalid.

{¶ 24} According to the majority, the tax commissioner's duty to apply the reduction factors and calculate the tax rates never arose "because no proper certification of the multicounty election has been presented to the tax commissioner

demonstrating that the tax is 'authorized to be levied' " under R.C. 319.301(D). Majority opinion at ¶ 1.  This conclusion is based on the majority's assumption that the only proper method for certifying the results of a multicounty election to the tax commissioner is on a Form 5-U.  But the majority cites no legal authority for this assumption.

**{¶ 25}** The *Ohio Ballot Questions and Issues Handbook* issued by Ohio Secretary of State Jon Husted in 2013[1] makes clear that an election "certification" can take different forms, depending on the nature of the election and the recipient of the certification.  The first "certification" occurs after a board of elections completes its official canvass of the vote, when it must declare the election results, in writing and signed by a majority of the board members.  R.C. 3505.33.

**{¶ 26}** According to page 1-14 of the handbook, "After a board has conducted its official canvass process and certified the official results of the election, the board must certify the results to the Secretary of State's office."  This certification to the secretary of state's office can take one of two forms.  "In most instances," the county board of elections can simply submit its official certification of results.  *Id.*  But when there is a multicounty issue, the board of elections of the most populous county must submit a Form 5-U "that clearly lists the final vote totals of each county in the district or jurisdiction, as well as the final, aggregated total of votes cast for and against the question or issue."  *Id.*[2]  The form itself indicates that it is to be used for property-tax levies and elections on income or sales taxes.

---

[1] Updated in part in 2014 and 2015, available at https://www.sos.state.oh.us/SOS/Upload/elections/ EOresources/general/2013QandI-Updated2014-07.pdf (accessed Feb. 24, 2017).

[2] Interestingly, according to the more recent *Election Official Manual* issued by the secretary of state as of January 2017, so long as the most populous county in a multicounty jurisdiction provides the necessary information to the secretary of state, it can do so in any format; the use of Form 5-U is not required.  *See* https://www.sos.state.oh.us/SOS/Upload/elections/directives/2017/Dir2017-02_EOM.pdf, at 8-26 (accessed Feb. 24, 2017).

**{¶ 27}** However, there is no indication, either in the handbook or on the form itself, that Form 5-U is the proper form to send to the tax commissioner. According to the handbook:

Depending on the type of question or issue, a board of elections must also send certification of results to other offices. For the boards' convenience, the Secretary of State's office has prescribed forms for certification of results for some types of questions and issues. The master list of forms and the prescribed forms are available to boards of elections on the Secretary of State's website. Only the most populous county for a multi-county question or issue must provide certification to the other offices listed below.

1. The board of elections must certify the results of an election on **tax levies and bond issues** to the following offices and agencies:

    a. The county auditor of each county in which the election was held.

    b. The fiscal officer of the subdivision in which the election was held.

    c. The Tax Commissioner of the State of Ohio * * *

    d. The Secretary of State.

(Boldface sic.) *Id*. at 1-14 and 1-15.

**{¶ 28}** The secretary of state has promulgated different forms for certifying election results to the tax commissioner. For most property-tax levies, the appropriate document for certifying results to the tax commissioner is Form 125, "Certificate of Result of Election On Tax Levy in Excess of the Ten Mill

11

Limitation."[3] The bottom of Form 125 clearly states (unlike the Form 5-U) that it is to be delivered to the "Ohio Dept. of Taxation, Tax Equalization Division," among others. In this case, it appears that the board of elections *did* submit a Form 125 to the Ohio Department of Taxation certifying the results of the election. And the evidence definitively establishes that the Delaware County Auditor later provided a copy of that form to the tax commissioner.

{¶ 29} The majority's primary theory of the case rests on the assumption that a Form 5-U was required to be submitted to the tax commissioner and because no Form 5-U was submitted, the tax commissioner's duty to calculate the reductions was never triggered. But there is no such legal requirement. The Form 125 is a legitimate form, if not the *only* legitimate form, to use to certify results to the tax commissioner.

{¶ 30} The majority opinion begs the question that lies at the heart of this case: having received a Form 125 certification, what gave the tax commissioner the authority to look beyond this certification and demand additional documentation? The majority implies that the tax commissioner was within his discretion to demand a copy of the Form 5-U, to ensure that the levy had been properly approved. But here again, it can identify no authority for this proposition.

{¶ 31} On October 12, 2016, the department of taxation instructed the county auditors that they must submit a Form 5-U in *all* instances involving a levy proposed to voters in more than one county. However, there is no evidence in the record to suggest that the department subjected this new requirement to the rulemaking process. "We have repeatedly held that when the tax commissioner seeks to exercise administrative authority in a systematic way over a broad range of taxpayer claims, he must promulgate his pronouncement as an administrative rule." *Renacci v. Testa*, ___ Ohio St.3d ___, 2016-Ohio-3394, ___ N.E.3d ___,

---

[3] For elections on school-district income taxes, the appropriate form for certifying results to the tax commissioner is Form 125-A.

¶ 37. Because the tax commissioner did not promulgate this requirement as a rule, it cannot have the force of law. *Progressive Plastics, Inc. v. Testa*, 133 Ohio St.3d 490, 2012-Ohio-4759, 979 N.E.2d 280, ¶ 31.

{¶ 32} Moreover, even if he had gone through the proper procedures, the requirement of a Form 5-U would be beyond the scope of the tax commissioner's authority. The majority cites R.C. 319.301(G) as authority for the tax commissioner, in the exercise of his discretion, to demand a copy of the Form 5-U. That statute provides that "[t]he commissioner may order a county auditor to furnish any information the commissioner needs to make the determinations required under division (D) or (E) of this section." According to the majority, the tax commissioner required the Form 5-U in order to determine that the tax was in fact "authorized" to be levied.

{¶ 33} The purpose of R.C. 319.301(G) is to authorize the tax commissioner to request additional information, on a case-by-case basis, necessary to make the tax and reduction calculations. It is neither the duty nor the prerogative of the tax commissioner to investigate the conduct of elections, and as a result, he could not promulgate a binding rule based on a claim of statutory authority that he did not possess. *See Nestle R&D Ctr., Inc. v. Levin*, 122 Ohio St.3d 22, 2009-Ohio-1929, 907 N.E.2d 714, ¶ 40 (no deference owed to agency's regulation when the legislature did not delegate administrative authority in that particular area). The only verification of the levy's passage that the tax commissioner required from the board of elections was the Form 125 certification, which is " 'conclusive as to the result of an election until set aside or vacated in some manner authorized by law.' " *State ex rel. Byrd v. Summit Cty. Bd. of Elections*, 65 Ohio St.2d 40, 42, 417 N.E.2d 1375 (1981), quoting *State ex rel. Shriver v. Hayes*, 148 Ohio St. 681, 76 N.E.2d 869 (1947), paragraph one of the syllabus.

{¶ 34} Contrary to the majority's assertion, this court's decision in *State ex rel. Daoust v. Smith*, 52 Ohio St.2d 199, 371 N.E.2d 536 (1977), is directly on point

and supports issuing the writ. In that case, the Toledo Board of Education directed the board's clerk-treasurer to sign tax anticipation notes to fund the Toledo public schools, following the passage of a tax levy. The clerk-treasurer refused, citing "irregularities that deviate from statutory requirements in both the notice of election and the form of the ballot." *Id*. at 200. We granted a writ of mandamus, holding that an election contest under R.C. 3515.08 et seq. was the only method by which to challenge the election results and that in the absence of a challenge, the board's certification of the election results was conclusive. *Id*. at 200-201. The majority's effort to distinguish *Daoust* is unpersuasive because the certification of the election results in that case was no more or less legitimate than the certification in this case.

{¶ 35} Today's decision will become a case study in the law of unintended consequences. It may seem uncontroversial to support the tax commissioner's decision on these facts, when the parties agree that the board of elections made a mistake. But the next time the tax commissioner decides, in the exercise of his supposed discretion, that a tax levy is invalid, the facts may be disputed and the governing law uncertain. The result in that situation will be the resolution of an election challenge in litigation between the tax commissioner and the local school district, a lawsuit from which the most essential parties—the secretary of state, the local board of elections, or even an affected elector—will be absent. This is not what the General Assembly envisioned when it enacted a comprehensive statutory scheme for election challenges in Chapter 3515 of the Revised Code.

{¶ 36} I dissent.

FRENCH and FISCHER, JJ., concur in the foregoing opinion.

_____

Bricker & Eckler, L.L.P., Maria J. Armstrong, Anne Marie Sferra, and Nicole M. Donovsky, for relator.

Michael DeWine, Attorney General, and Christine Mesirow, Assistant Attorney General, for respondent.

Squire Patton Boggs, L.L.P., Steven A. Friedman, and Richard D. Manoloff, urging granting of the writ for amici curiae Ohio School Boards Association, Buckeye Association of School Administrators, and Ohio Association of School Business Officials.

_____